(Decided 9th February, 1882.)

CAROLINE D. SEWELL *vs.* RICHARD S. SLINGLUFF, by his next friend, F. C. SLINGLUFF, and FIELDER C. SLINGLUFF.

*Parol Evidence not admissible to show an Alleged Direction given by a Testatrix at the time of the Execution of a Will, that it should become Inoperative on the Happening of Certain Events—Escrows.*

On the 28th May, 1867, E. S., wife of F. C. S., executed a paper purporting to be her last will and testament, by which she gave and bequeathed to her mother, C. S., all the property of which she might die possessed, absolutely. It is admitted that E. S. was at the time capable of making a valid will. In July, 1867, a child was born to E. S., which child died in July, 1868. In October, 1868, another child, R. S. S., was born to her, which is still living. In January, 1869, E. S. died. The paper was delivered soon after its execution to her husband, and was by him delivered to a kinsman of E. S., who kept it till after E. S's death, when he delivered it to F. C. S., who handed it to C. S., who retained it. In January, 1875, C. S. having declared her intention of presenting the will for probate, and of asserting her rights under it, R. S. S., by his next friend, F. C. S. and F. C. S., filed their bill in the Court below,

charging that the paper was executed by E. S., and delivered to her husband with the request, understanding and direction that the same was not to be taken or probated as her will, in case she should die leaving issue, but in such event it should be inoperative, so that her estate should pass as if it had never been executed. The bill further charged, that C. S. had knowledge at the time of the execution of the paper of the intention and direction so given by the maker, and assented to the same. The bill prayed that C. S. might be enjoined from offering the paper for probate, and that she be ordered to produce the same for cancellation. No plea to the jurisdiction of the Court below, was filed, and no objection to it made at the hearing below. HELD:

That parol evidence was inadmissible to show parol declarations of E. S., whether made before, after, or at the time of the execution of the will, to render it inoperative, on the grounds set forth in the bill, E. S. having executed it *animo testandi*, and as a serious and well considered act; and that C. S. was not estopped from asserting her rights under the will.

The reasons that apply to other instruments as escrows, have no applicability to wills.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON and STONE, J.

*Edward Otis Hinkley*, and *I. Nevett Steele*, for the appellant.

In reference to a will absolute on its face and duly executed, it is not competent to show by parol evidence, that it was the intention of the testator, that the will should cease to operate or not take effect, if a certain state of circumstances existed at his death, or that it should take effect only if such a state of circumstances did then exist. The utmost extent to which the cases have gone is, that if a paper be written not *animo testandi*, but as a jest or

a sham, with no intention that it should in any event be a will, then parol evidence of such a state of facts may be given ; but even then it is to be received with great caution.   But where a will, absolute on its face, is seriously and formally executed, *animo testandi*, no case can be found which holds—and we submit it would be utterly inconsistent with principle so to hold—that such a will may be set aside by parol proof of an outside intention of the testator that the will should be conditional, and should have no effect, at his death, if a certain contingency should then have occurred.   1 *Redfield on Wills*, 171, 172 ; *Lester vs. Smith*, 3 *Swabey & Tristam*, 282.

As to the admissibility of evidence of the declarations of the testator, the Maryland cases show that the rule that they are inadmissible to revoke, impeach, or invalidate a will, in whole or in part, has been maintained most strictly.

In the following cases, declarations have been held inadmissible: In *Massey vs. Massey*, 4 *H. & J.*, 145—that testator believed he had destroyed his will.    In *Tilghman vs. Stewart*, 4 *H. & J.*, 165—if complete, the will is full evidence in itself of the intention.   In *Whitman vs. Goodhand*, 25 *Md.*, 106—that he had concluded to die without will.

In *Diffenderffer vs. Griffith*, 50 *Md.*, 480—to prove fraud and undue influence—1st, because *hearsay ;*  2nd, because inconsistent with the statute.   In *Stannard vs. Barnum*, 51 *Md.*, 451, &c.—held dangerous and without precedent, to show that testator did not know that he owned certain property.   In *Fouke vs. Kemp*, 5 *H. & J.*, 138—to show that children included step-children.   In *Corporation vs. Hammond*, 1 *H. & J.*, 604—the true construction of the will must depend alone upon the will itself.   In *Mitchell vs. Mitchell*, 6 *Md.*, 233—held extrinsic evidence is only admissible to explain latent ambiguities.   Same point in *Walston vs. White*, 5 *Md.*, 297.   In *Taggart vs. Bouldin*, 10

Sewell *vs.* Slingluff.

*Md.*, 117—anything contrary to plain import of will, inadmissible.

The two cases of—*Warner vs. Miltenberger*, 21 *Md.*, 264, and *Hawman vs. Thomas*, 44 *Md.*, 30, are very clear. That extrinsic evidence is inadmissible to show that testator meant something different from what his language imports. *Redfield on Wills*, 501, 539, 544, 555, 558, 568, 571, *g;* 572, 621, *g;* 664, *g.*

Wigram's enumeration of instances in which parol testimony is inadmissible, cited also by *Redfield,* 504 ; *Jackson vs. Kniffen,* 2 *Johnson,* 31 (*N. Y.*)—and notes in American Decisions. *Shailer vs. Bumstead,* 99 *Mass.*, 112 ; *Wotten vs. Redd,* 12 *Gratt.*, 196.

Instructions to draftsman of a will are inadmissible. *Negro Cæsar vs. Chew,* 7 *G. & J.*, 127 ; *Alder vs. Beall,* 11 *G. & J.*, 125 ; *Gaither vs. Gaither,* 3 *Md. Ch.*, 165.

Independently of the Statute of Frauds, parol proof is not admissible to vary, add to, or contradict the terms of a deed or written agreement, except to show fraud. *Wesley vs. Thomas,* 6 *H. & J.*, 27 ; *Watkins vs. Stockett,* 6 *H. & J.*, 435.

Parol evidence of declarations of a grantor, made after a conveyance was executed, are not evidence in any way to affect the validity of the deed. *Hurn vs. Soper,* 6 *H. & J.*, 281.

If parol evidence be admissible in this case at all, to set aside the will—which is confidently denied—it must be cogent and conclusive; and we submit that the evidence in the record is not of that character. Mr. Slingluff is the principal, and indeed, we may say the only witness as to the material facts of the case; and he is interested and a party to the suit, and his testimony is mainly inferential and not direct. Much more stringent proof should be required to justify the decree of the Court below. The complainants have failed to prove their case. *Lester vs. Smith,* 3 *Swabey & Tristam,* 282.

The case of *Gaither vs. Gaither,* 3 *Md. Ch.,* 158, shows the only ground upon which the complainants could succeed; but in this case, as in that, there is no sufficient evidence to establish either fraud or mistake; here is no promise, no knowledge even. And see *Semmes vs. Worthington,* 38 *Md.,* 298. In *Vreeland vs. Williams,* 32 *New Jersey Eq.,* (5 *Stewart,*) 734, and same case at page 135, the result of the authorities is stated thus: "Any declaration of intention on the part of the testator different from that expressed in his will, is incompetent as evidence, unless it was communicated to the legatee, assented to by him, and such assent acted upon by the testator." A large number of cases is cited by the counsel and by the reporter in that case. All show either a promise of the legatee, or some fraud attempted by him.

The defendant has not, under the circumstances of the case, been guilty of *laches,* but acted promptly after being informed of her legal rights. *Pairo vs. Vickery,* 37 *Md.,* 467; *Lazier vs. Nat. Union Bank,* 52 *Md.,* 78; *Farmers' & Mechanics' Bank vs. Wayman,* 5 *Gill,* 336.

Additional cases:—There must be a promise by devisee. *Collins vs. Hope,* 20 *Ohio,* 492; *Jones vs. Bodley,* 3 *Ch. App.,* 362; *Rowbotham vs. Dunnett,* 8 *Ch. Div.,* 430, 480; *Tee vs. Ferris,* 2 *Kay & Johnson,* 357; *Walgrave vs. Tebbs, Ib.,* 313; *Lomax vs. Ripley,* 3 *Sm. & Giff.,* 48; *McCormick vs. Grogan, L. R.,* 4 *H. L.,* 82; *Bedilian vs. Seaton,* 3 *Wallace, Jr.,* 286. As to Escrow:—*Sheppard's Touchstone,* 58; 13 *Eng. Rep.,* (*Moak's Notes,*) 786. As to parol evidence:—*Reeves vs. Reeves,* 1 *Devereux's Eq.,* 389—Declaration as to future child inadmissible; 1 *Murphy's Eq., N. C.,* 447; *Magee vs. McNeal,* 41 *Miss.,* 17; *Wagner vs. McDonald,* 2 *H. & J.,* 346; *Waltige vs. Waltige,* 55 *Pa. State,* (5 *P. F. Smith,*) 242; 2 *Bradford's Surrogate,* 208—Conditional will; *Martin vs. Duffey,* 4 *Philadelphia,* 76—Parol testimony inadmissible where Statute of Frauds requires writing; *Abercrombie vs. Abercrombie,* 27 *Ala.,*

495; *Mott vs. Reichtmeyers*, 57 *N. Y.*, 59; *Skipwith vs. Cabell*, 19 *Grattan*, 759—Erroneous advice about a sequestration Act of the late Confederate States.

*John P. Poe*, and *S. Teackle. Wallis*, for the appellees.

1. That parol evidence is admissible to show that Mrs. Ella Slingluff's will was intended to take effect and to be used as a will only in the event of her death without issue; and that it was her wish and direction that it was to be wholly inoperative in case she died leaving issue.

2. That the parol testimony in this case fully shows that such was her wish, intention and direction; and that, consequently, the paper sought to be set up as her will cannot be accepted or allowed to be probated as such.

3. That whatever rights Mrs. Sewell ever had, if any, to claim her daughter's property, under such supposed will, have been lost by deliberate, intelligent and intentional acquiescence, with full knowledge of all facts; and that by such acquiescence, the conduct of Mr. Slingluff has been so influenced by her as to create a clear equitable estoppel against her now to set up any claim under such pretended will.

On the first point the appellees referred to the following authorities:—*Hawman vs. Thomas*, 44 *Md.*, 41–46; *Harris vs. Pue*, 39 *Md.*, 548; *Leppoc vs. The Union Bank*, 32 *Md.*, 144–146; *Stanton vs. Miller*, 65 *Barb.*, 58; *Pym vs. Campbell*, 6 *Ellis & Black*, 370; *Wallis vs. Littell*, 11 *C. B., N. S.*, 369; *Davis vs. Jones*, 17 *C. B., N. S.*, 625; *Beall vs. Poole & Hunt*, 27 *Md.*, 654; *Stephen's Digest of Evidence*, 88, 89, 90; 2 *Taylor on Evidence*, sec. 1038, and notes; *Redfield on Wills*, ch. 6, sec. 17, *p.* 9; 2 *Wharton on Evidence*, 161, sec. 927; *Grierson vs. Mason*, 60 *N. Y.*, 394–397; *Mason, et al. vs. Poulson, Adm'r*, 40 *Md.*, 366; *Lester vs. Smith*, 3 *Swabey & Tristam*, 282.

2. The bill alleges that the request, understanding and direction of Mrs. Slingluff were that the paper was not to be used as a will in case she died leaving issue. It also alleges that Mrs. Sewell knew of and assented to this understanding, purpose and direction. In her answer she denies both of these allegations.

The testimony in our view clearly sustains them both, but the case of the appellees does not depend upon both being proved. Proof of the former averment is all that is necessary to entitle the appellees to an affirmance of the decree, for it is the fact that the will was not to be used as such in the event of Mrs. Slingluff's death, without leaving issue, and not the knowledge of that fact by Mrs. Sewell, that must control the decision of the case. This averment of the bill is abundantly established. It is intrinsically probable. It is proved by the testimony. It is disproved by nobody.

Mr. Slingluff's competency as a witness is denied by the counsel for the appellant, but the question is set at rest by the decision in *Graves vs. Spedden*, 46 *Md.*, 538, 540. Nor does the case fall under any of the exceptions in the statute. *Revised Code, Art.* 70, secs. 1 and 2.

3. The appellant is equitably estopped from asserting any rights under this supposed will. For six years she accepted and acted on what she well knew was and must have been her daughter's wish, viz., that the will was to be used only in case of her death without leaving issue, and cannot now be heard to ignore and disavow what she so long acquiesced in.

But, in conclusion, even if not thus precluded from repudiating her former conduct, the case of the appellees is thoroughly made out as matter of fact, and there is no rule or principle of law which stands in the way of its successful assertion. It is a case most natural and probable in itself. It is distinctly and positively proved by unimpeached witnesses, and is sustained and corroborated

by inferences from admitted facts, which it is impossible to resist. It is supported by a well established family understanding and by long acquiescence, and, finally, it is disproved by no one.

STONE, J., delivered the opinion of the Court.

It appears from the record in this case, that on the 28th of May, 1867, Mrs. Ella Slingluff, of the City of Baltimore, executed the following paper :

In the name of God, Amen. I, Ella Slingluff, of Baltimore County, in the State of Maryland, being of sound and disposing mind, memory and understanding, and knowing the certainty of death, and the uncertainty of the time thereof, do hereby declare and publish this, my last will and testament, in manner following, that is to say ; I give and bequeath to my beloved mother, Caroline D. Sewell, all the property that I may die possessed of, of whatever kind, character or description it may be, to have and to hold, to her and her heirs forever.

Test:—Ella Slingluff, [Seal.]

Done this twenty-eighth day of May, in the year eighteen hundred and sixty-seven, and signed in the presence of—

Lewis E. Bailey, [Seal.]
Bena Sanders, [Seal.]
Jeannette Roper, [Seal.]

It is conceded that at the time of the execution of this paper, Mrs. Slingluff was fully capable of executing a valid will. That she was at that time married to Fielder C. Slingluff, one of the complainants, and that she was then childless, but expected soon to become a mother, and that in fact her first child was born in the month of July following, and lived until July, 1868, when it died. That Mrs. Slingluff gave birth to another child, Richard S. Slingluff, in the month of October, 1868, and that her

child Richard is still living, and is one of the complain-
ants. That Mrs. Slingluff died in January, 1869, and
her husband Fielder C., still survives.

It also appears from the record that the paper above
referred to, was delivered soon after its execution to Fiel-
der C. Slingluff, and was by him delivered to Lewis E.
Bailey, a connexion of the family of Mrs. Slingluff, who
kept it in his possession until after the death of Mrs.
Slingluff, when he delivered it to Fielder C. Slingluff,
who passed it over to the appellant, who now has posses-
sion of the same.

That about the month of January, 1875, the appellant
declared her intention to present the will for probate, and
to assert her rights as legatee under it.

Thereupon the appellees filed their bill in the Circuit
Court of Baltimore City, alleging and charging that the
said paper was executed by Mrs. Slingluff, and delivered
to her husband, with the request and positive understand-
ing and direction that the same was not to be held or
taken, or to be used or probated as her last will and testa-
ment, in case she should die leaving issue, but in the
event of her leaving issue, should be wholly inoperative,
so that her estate should pass as if it had never been exe-
cuted; and also charging that the appellant had full
knowledge at the time of the execution of said paper, of
the intention and direction so given by the maker, and
assented to the same. And the bill prays that the appel-
lant may be enjoined from offering said paper for probate,
and that she be ordered to produce the same for cancella-
tion.

The appellant in her answer positively denies that she
had any knowledge of, or ever assented to the alleged fact
that the paper in question was only to be used or pro-
bated in the event of her daughter's death without issue,
and she also denies that such was the fact. She also
accounts for her delay in asserting her rights under said

35                    v. 57.

paper, by saying, that Fielder C. Slingluff had assured her upon the death of her daughter, that the birth of a child had made the paper inoperative in law, and that she did not know to the contrary until a short time before the complainants instituted this suit. She also claims all her rights as legatee under said paper.

A commission was then duly issued, and a large mass of parol testimony taken by both appellant and appellees, the case set down for final hearing, and the Court below passed a decree perpetually enjoining the appellant from offering said will for probate, and directing it to be brought into Court to be cancelled; and from this decree she appealed to this Court.

The first and most important question that presents itself for our consideration, is whether parol evidence is admissible in this case to prove that the paper referred to, although in form a valid will, was in fact intended by the testatrix to be used and probated as her will only in the event of her dying without issue, and that in the contingency of her dying leaving issue, it should be wholly inoperative, and her estate should pass as if it had never been executed.

The case is an interesting one and the point so raised a novel one. The case has been very ably argued before us by the eminent counsel engaged in it, and many authorities have been cited, but we have been able to find no case either in England or this country precisely like the present, and the determination of the case must depend more upon the application of well known and well settled general principles than upon the authority of adjudicated cases.

There are three essential requisites for every good and valid will; and these requisites are, perfect testamentary capacity, the intention to dispose of property in the event of death, and the formalities required by the statute. One of these requisites for every perfect will—the inten-

tion to dispose of property in event of death—is what the law terms the *animus testandi,* and is thus defined in 2 *Shepherd Touch.,* 204 :

"The second thing required to the making of a good testament is that he that doth make it, have at the time of making it *animus testandi, i. e.* a mind to dispose, a firm and advised determination to make a testament, otherwise the testament will be void," and he then goes on to say, that "if a man jestingly and not seriously writes or says that such a one shall have his goods, this is no will." Now when Mrs. Slingluff on the 28th of May, 1867, executed this paper, she clearly had this *animus testandi.* The act was not a jest or a sham, but a serious and well considered one. She was perfectly sane, and no fraud or undue influence was practiced on her. She was perfectly competent in every respect to execute a valid will. When, therefore, under these circumstances, she did on that day sign and seal that paper, purporting to be her last will and testament, in the presence of the subscribing witnesses, and declared in writing in the instrument itself, that she did publish and declare it to be her last will and testament, it did then and there become her last will and testament.

The law required her to do nothing more than she did do, to make the will perfect, and she could have done nothing more. No further declaration or act was required of her.

She possessed undoubted testamentary capacity, and the *animus testandi,* and complied literally with the forms required by our statute, by reducing her wishes to writing, signing, sealing and declaring it to be her last will in the presence of three witnesses ; and when all this was done, the act was a complete and finished one. If under these circumstances the paper in question was not her last will and testament, it is difficult to describe what it was. It was either her last will and testament, or it was a nullity, and entirely void.

But even the complainants do not claim that the paper was void and worthless at the time of its execution, but only became so by events that happened afterwards.

The whole. theory of their case rests upon the assumption that it was a good will on the day of its date, but was avoided afterwards, and that had the testatrix died at any time after its execution and before the birth of her child, that her mother would have taken under the will, without doubt or question. To so much of that theory as recognizes the paper as a valid act, on the day of its execution we assent, and we are of the opinion that at that time it was her last will and testament, and not a nullity and void; and being then her last will and testament, the question next arises, how it could be made inoperative afterwards.

· Wills are more especially guarded and protected by the law, than any other instruments. They are guarded in their inception by the formalities required by our statute, and after they are made, they are equally guarded by our statute, which points out the only mode by which they can be revoked or annulled.

This will may be treated as intending to pass real estate, and the mode of its revocation is pointed out in .sec. 302 of Art. 93 of the Code, which provides that no such will shall be revoked, except by some other will, or by burning, cancelling, tearing or obliterating the same by the testator himself, or by some other person in his presence and by his direction and consent. This statute is imperative in its terms, and no mere verbal declarations of a testator, however strongly expressed, and however earnestly he may wish, or intend so to do, can have any effect upon a will after its execution. It can only be revoked in the manner prescribed by the statute. *Wittman and Wife, et al. vs. Goodhand, Adm'x,* 26 *Md.,* 95.

To allow the parol declarations of the testatrix, whether made before, after, or at the time of the execution of the

will to render that will inoperative at some future time, and in the event of some future contingency, would be nothing more or less than to allow a parol revocation of it. It makes no difference that we can see, whether such revocation is called a revocation or by some other name. To revoke or to render inoperative are synonymous terms, and to allow the evidence for the latter purpose, is to allow it for the former. The practical effect is precisely the same.

But there is another objection to the admissibility of this evidence. We do not understand the complainants to controvert the well settled rule that parol evidence is not admissible to add to, vary or contradict a written instrument, but they seek to exclude the present case from the operation of this rule by insisting that the question before the Court is not the construction of the instrument, but whether on the happening of a contingency the instrument should have any effective legal existence, and that they are dealing not with its construction, but with its existence.

Let us see if this position is tenable. Here is a paper presenting upon its face all the *indicia* of a perfect will. In that paper the testatrix asserts in the most unequivocal manner, *and in writing*, that the paper is her will. The paper itself contains no condition whatever, but gives the whole property of the testatrix to her mother unconditionally. Parol testimony is sought to be introduced, to prove that it was given to her mother only conditionally. Would not the effect of this be, if admitted, to add by parol a new clause to the written will?

So that the will would read substantially thus—

I give and bequeath to my beloved mother, Caroline D. Sewell, all the property that I may die possessed of, of whatever kind, character or description it may be, to have and to hold to her and her heirs forever, *provided that I die without leaving issue, but if I die leaving issue, then such issue to have all my property.*

This new and interpolated parol clause makes a different will from that which the testatrix made for herself in writing, and adds to the instrument, and the written will no longer speaks for itself, but its true construction, and the intent of the maker is to be gathered from parol evidence.

The learned Judge who decided this case below, says in his opinion:

" Instances are without number of instruments (other than wills) formal in all the requisites of execution, which have been made to be called into effective existence only on the happening of a condition, the condition being made apparent by parol proof; why may not the same be held of wills?"

There are numerous cases where instruments (other than wills,) perfect in form have been held as escrows, and only called into effective existence by the happening of a condition, and that condition shown by parol.

There have been many such cases referred to by the appellees, as of deeds, notes, &c. The reason why such instruments are held as escrows is that the consent of some one of the parties to the instrument is withheld until the happening of some condition. In all such cases, and in all instruments that can be held as escrows, it will be found that the consent of *more than one party is necessary to give validity to the instrument.*

Thus in the case of a deed, the consent of both the grantor and grantee is essential to its validity; and in the case of a note, the maker and payee. These instruments so held as escrows are all in the nature of contracts, by which the parties are to be bound to each other upon the happening of a contingency, but not otherwise. The Courts can and do interfere and compel the parties to perform their agreement so made.

But no case has been cited, and we believe none can be found, where a will has ever been held as an escrow, and

the reason that applies to other instruments has no applicability to wills.

A will is the act of the testator *alone*, and requires the consent of no other person. It is, when made according to the forms required by law, a completed act, and leaves nothing more to be done; no delivery to any one is necessary. It is in no sense a contract, and no one is bound by it, and the testator can revoke, alter or change it, as often as he pleases, and no one has the right to interfere, and no Court can coerce him. It is his privilege and right, which he may exercise or not; at his own pleasure.

Possessing as he does this unrestrained power over his will during his own life-time, it would be a mere idle and nugatory act to attempt to make an escrow of a will during his life. If the condition is to happen at or after the death of the testator, the evil consequences likely to ensue are more apparent, and an unprincipled custodian, instead of testator, would have it in his power to make or unmake the will. The three witnesses would be useless. They might indeed depose that the testator was of sound mind, and that he did publish and declare the paper to be his last will, and they would be met with the answer, that all that was true, and that the will was formally executed, but that the testator had given directions, that in a certain contingency it should be inoperative and the property should pass as if it never had been executed. Every condition allowed by law can be *put in a will*, and no good reason can be shown why every testator who desires a conditional will does not make one. The books are full of such wills. No one is left to the necessity of trusting a part of his testamentary disposition to the uncertain memory of a witness.

In the case of deeds or other instruments that can be held upon condition, the condition must always be a condition precedent and not a condition subsequent, that is to say, the condition must occur *before* the deed is delivered

to the grantee, for as soon as the instrument is delivered to the party entitled to it, it at once becomes a completed act.

In *Black vs. Shreeve,* 2 *Beasly,* 458, the Court say:

"If the instrument be once delivered to the party, who on its face is entitled to it, it becomes *eo instanti* a deed. No agreement in conflict with the plain tenor of the deed is permitted to be proved—to show that its operation as a deed is to depend upon the performance of some condition subsequent."

As we have said above, the will in this case was a complete and finished act—as much so as a deed delivered to the grantee,—if it were admissible to prove by parol, any condition whatever, (which however we do not admit) it must certainly be a condition precedent, and not a condition subsequent.

The case of *Lester vs. Smith,* 3 *Swabey & Tristram,* 282, and the case of *Nichols vs. Nichols,* 2 *Phillimore,* 180, have been much relied on in the argument of this case by appellees. But both these are unlike the case at bar. In them the essential element of a will, the *animus testandi,* was totally wanting, and parol testimony was allowed to show that the paper never was intended at any time and under any circumstances to operate as a will.

In *Lester vs. Smith,* Smith had made a will duly executed in which he had left certain property to his daughter, Mrs. Mason. A Mrs. Marshall, the mother-in-law of Mrs. Mason, was the occupant of a house that Smith claimed title to, but Mrs. Marshall refused to recognize his title.

He thereupon fell upon the plan of executing a codicil revoking the devise to his daughter, thinking that Mrs. Mason, when she knew it, would use her influence with Mrs. Marshall and get her to recognize his title to the house. But he gave explicit directions that this codicil was never to be used or to operate as his will in any event, and had been executed only to effect that collateral object.

The case was tried before Sir J. P. WILDE, and although he admitted parol testimony to prove these facts, he said the question gave him some anxiety, and said, speaking of the codicil:

" It was however, executed in the presence of testator's brother, to whom it was given by the testator, with express directions that he was not to part with it, and that it was in *no event to operate,* or to revoke the bequest made in his will, but to be used only in the manner above described. Similar declarations were made by the testator, at the moment of its execution. A codicil thus duly executed in point of form and attested by two witnesses has been directly impeached by parol testimony. It bears all the appearance on the face of it, of a regular testamentary paper; but on the evidence, it has been found by the jury, not to have been intended as such by the testator. The momentous consequences of permitting parol evidence thus to outweigh the sanction of a solemn act, are obvious. It has a tendency to place all wills at the mercy of a parol story, that the testator did not mean what he said, on the other hand; if the fact is plainly and conclusively made out that the paper which appears to be the record of a testamentary act, was in reality the offspring of a jest, or the result of a contrivance to effect some collateral object, and never seriously intended as a disposition of property, it is not reasonable that the Court should turn it into an effective instrument, and such no doubt is the law. There must be the *animus testandi.*"

And further on he says:

" In the present case however, the Court finds the evidence so cogent, that it is prepared to act on the finding of the jury, that the codicil was executed as a sham and a pretence, never seriously intended as a paper of testamentary operation."

We have given a lengthy extract from the opinion in this case, because it was much relied on in the argument.

It will be seen, that the testimony was only admitted upon the ground that the codicil was only a sham, never for a moment, or in any contingency to operate as a testamentary disposition, and that the *animus testandi* was entirely wanting and for no other reason. In the case before us the *animus testandi* did unquestionably exist, and the paper was intended as a testamentary disposition of property at the time of its execution. So in the case of *Nichols vs. Nichols*, 2 *Phillimore*, 180, where parol evidence of a witness to a will was received that the paper was not really the will of the party, but only written by him as a specimen of how short he could write a will. Sir JOHN NICHOLL said:

"If this evidence can be received and is to be credited, this is not the will of the deceased, for it wants the great requisite, the *animus testandi;* it was not written with the mind and intention to make a will. A question has been made whether this evidence can be received. I am of opinion that it can and must be received."

These cases go perhaps as far as any cited in allowing parol evidence. But in these and in all the other cases referred to, the Courts have restricted the evidence to the ascertainment of the *animus testandi*, and have never gone beyond that. Even if we were to admit that these cases were well decided, (which we do not determine,) we consider the parol evidence offered in this case inadmissible. If it were in any such case admissible, we would be unwilling to reject it in this, as the straightforward testimony and disinterested conduct of the husband of the testatrix presents a strong case, and one with many equitable features, strongly appealing to our sense of justice. But we must take the law as we find it; and as in all the long period that has elapsed since the passage of the Act of 29th Charles 2nd, no Court has permitted such testimony to be received, we cannot do so now.

The only remaining point to be considered is whether Mrs. Sewell is now estopped from asserting her rights,

under the will of her daughter.   There is nothing in this record that can operate as such an estoppel.   There is no Statute of Limitations in this State prescribing a time within which a will must be offered for probate.   Mrs. Sewell has satisfactorily accounted for her delay, by her sworn allegation that she was ignorant of her rights, and there is no evidence before us, that her delay caused any loss or injury to any one, except perhaps herself, and we must, therefore, overrule that exception.   No plea to the jurisdiction of the Court has been filed in this case, nor any objection to it made at the hearing in the Court below, and we have therefore decided the questions presented to us in the record.   But we must not be understood to decide the question, whether a Court of equity has the power to restrain by injunction any one from presenting to the Orphans' Court a paper, which he claims to be a last will and testament, or in any event to order such a paper to be cancelled.

*Decree reversed, and*
*bill dismissed.*

(Decided 9th February, 1882.)