CLARENCE A. HADDOCK, executor, *vs.* BOSTON AND MAINE RAILROAD.

Essex.     January 28, 1888. — February 29, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, & KNOWLTON, JJ.

*Will — Probate — Limitation — Evidence.*

A will devising lands may be admitted to probate at any time after the death of the testator.

A woman, whose husband was reputed to have died soon after their marriage, and to whom a deed of land, describing her as " Sarah P., widow," was given in 1801, made a will devising the same land in 1807, as " Sarah P.," without more, and died in 1822, the will being probated in 1885. *Held*, that the fact that she made the will was competent evidence of her legal capacity.

APPEAL by the Boston and Maine Railroad from a decree of the Probate Court, entered November 16, 1885, allowing the will of Sarah Pendergast, formerly of Haverhill, who died in 1822.

Trial in this court before *Morton*, C. J., who reported the case for the consideration of the full court, which, so far as material, is as follows:

The executor claimed that the appellant had no right to appeal from the probate of the will; but it was agreed that the title of the appellant to real estate devised by the will might be affected by the establishment of rights under the will if it was admitted to probate, and the judge ruled that the appellant had the right to appeal.

The following issue among others was submitted to the jury: " 4. Was Sarah Pendergast a married woman, having a lawful husband alive at the time of the execution of said will? " The executor offered in evidence the writing propounded for probate as the will of Sarah Pendergast, which was delivered to him in

1884, having been found among papers in the possession of one of her heirs, and which, so far as material, was as follows: " I, Sarah Pendergast, of Haverhill, in the county of Essex and Commonwealth of Massachusetts, being of sound mind, memory, and understanding, do make, publish, and declare this my last will and testament, in manner following: .... 1. I give, devise, and bequeath unto my grandson, Samuel Frink, Jr., and his heirs and assigns forever, all my real estate, consisting of a small lot of land situate in said Haverhill, with a small dwelling-house and barn on the same; and in case the said Samuel Frink, Jr., shall decease in my lifetime, I will that my daughter Elizabeth Frink shall have, hold, and enjoy the aforesaid real estate, and at her decease to be equally divided between her children. .... In witness whereof I have hereunto set my hand and seal this thirty-first day of October, in the year of our Lord one thousand eight hundred and seven.   Sarah Pendergast.   [Seal.]"

It appeared that in 1859 one of the heirs of Sarah Pendergast brought suit against the appellant to recover possession of a portion of the land devised by the will, and the executor offered in evidence a deed from Mary Ayer to " Sarah Pendergrass, of Haverhill aforesaid, widow," dated December 25, 1801, and duly recorded, which purported to convey the premises claimed by the demandant in that suit, together with testimony tending to show that the deed was found with the file of court papers in that case. The appellant objected to the admission of this deed; but the judge admitted it, on the ground that the recitals contained in it, and the fact that the grantee received it, and acted under it, had a bearing upon the question whether the husband of Sarah Pendergast, as it was conceded that she had been previously married, was living when she executed the paper purporting to be her will.   There was also evidence tending to show that the tradition and repute in the family were that Pendergast died soon after his marriage.

The appellant requested the judge to make the following rulings: " 1. That, as matter of law, the paper offered could not be admitted to probate as a will, by reason of the lapse of time since it purported to have been executed, and the death of the testatrix.    3. That upon the evidence the jury would not be authorized to find that Sarah Pendergast was a widow at the

time of the execution of the instrument propounded.   4. That, in determining whether or not Sarah Pendergast was a widow when she executed said instrument, the jury would have no right to consider the fact that she executed a paper purporting to be a will as evidence that she had legal capacity to execute a will devising land."

The judge declined so to rule; the appellant excepted to such refusal; and the judge submitted the issue to the jury, under instructions not otherwise excepted to.

If the rulings and refusals to rule, made under the exception of the appellant, were incorrect, another trial of the issues was to be had; if otherwise, the case was to stand for further proceedings in this court.

*S. Lincoln,* for the appellant.   1. To the opinion of the court in *Shumway* v. *Holbrook,* 1 Pick. 117, the reporter has appended the following note: "Mr. Justice Jackson, at the argument, said that there was a case in the county of Essex perhaps thirty years ago, where it was found that the widow of a testator must hold land under the will which had not been proved.   The will was therefore carried to the probate office, but, more than twenty years being elapsed since the death of the testator, the judge of probate refused to allow it; but upon an appeal the decision was reversed, as a will must be proved and allowed in order to convey land."

The case in Essex referred to by Mr. Justice Jackson was, without doubt, the case of *Bourne* v. *Greenleaf.*   An examination of the papers on file in the Probate Court and in the Supreme Judicial Court confirms this belief, because the facts there disclosed appear to conform to Mr. Justice Jackson's statement of them.   This was also the opinion of Mr. Justice Gray, as stated in *Waters* v. *Stickney,* 12 Allen, 13.

The papers on file in *Bourne* v. *Greenleaf* show that a paper purporting to be the will of Thomas Beck, bearing date August 1, 1765, was offered for probate to the Probate Court of Essex County on December 7, 1801, by Joseph Buckley, attorney to Deborah Bourne, who recites in her petition that she is a sister and one of the heirs of Frances Beck, deceased, who was named in the will of Thomas Beck as his widow and executrix.   Her petition does not state the date of the death of Thomas Beck, nor of the death of Frances Beck.   It prays the court "to pro-

ceed to hear and examine the witnesses whose names are subscribed to said will, and to prove and allow the same in due form of law." Upon the same day the court decided as follows: "I do not consider myself authorized by law to make any order or decree on the instrument above mentioned, and therefore do not grant the above request"; and Deborah Bourne claimed an appeal from the decision, which was duly entered in the Supreme Judicial Court. One of her reasons of appeal was as follows: "*Third.* That the said judge was fully authorized by law to proceed to hear and examine the said subscribing witnesses, and upon such examination to prove, approve, and allow the said instrument as the last will and testament of the said Thomas Beck." The appeal was duly heard by the Supreme Judicial Court at a term beginning November 9, 1802, and the court admitted the will to probate. The record contains this simple statement, but no reasons for the decree are given. The members of the court who held the term were the "Honble Theodore Sedgwick, Esq., Samuel Sewall, Esq., George Thatcher, Esq., Justices."

Among the papers on file in the probate office at Salem is a letter bearing date January 5, 1801, addressed to the judge of probate by Abner Greenleaf, asking that notice be given to the heirs of Thomas Beck in case any instrument purporting to be his last will should be presented for probate, "as there are several reasons which the said heirs will give against proving that will at this late hour." There is also another paper on file in the probate office, without signature and without date, which begins as follows: "May it please your honour, I have objections as follows: 1st. Because the executrix is dead, and she lived upwards of thirty years after the death of the testator and never offered this will for probate; now, may it please your honour, as the executrix is dead, I wish to know by what authority Mr. Hinkley offers this will for probate. No administration shall be granted, says the law, on any estate after thirty years, &c., and how can a will be proved after upwards of thirty years, and an administration granted with the will annexed?" &c. It does not appear that this paper was ever presented to the appellate court. The handwriting indicates that it was probably written by the same hand which wrote the paper above mentioned signed Abner Greenleaf. Unless this unsigned manu-

script be held to exhibit the facts of this case, there is no evidence to show how long it was after the testator's death when his will was admitted to probate.

In *Shumway* v. *Holbrook*, 1 Pick. 117, the court says, " If a will can be found, it may be proved in the probate office at any time, in order to establish a title to real estate." The case does not decide this point, however, but merely that a will of which there has been no probate cannot be admitted in evidence; and the words quoted are *obiter dicta.*

In *Waters* v. *Stickney*, 12 Allen, 13, Mr. Justice Gray says, " It has been directly adjudged by this court that a will may be proved even thirty years after the death of the testator," &c.; and cites as authority *Bourne* v. *Greenleaf* and *Shumway* v. *Holbrook.* In this case, again, the only point decided material to the present discussion is that a codicil may be admitted to probate fourteen years after the maker's death, and the words quoted above are again *obiter dicta.*

The cases of *Bourne* v. *Greenleaf*, *Shumway* v. *Holbrook*, and *Waters* v. *Stickney* are all the cases decided in Massachusetts which touch the question under consideration, and they all rest upon the narrow foundation of *Bourne* v. *Greenleaf*, and in that case the essential facts are not authenticated, nor is it clear to what extent the matter of the alleged lapse of time was brought to the attention of the court, or was argued before it or considered by it.

After a lapse of more than eighty-five years since *Bourne* v. *Greenleaf* was decided, and when so little appears upon the record, the case cannot be regarded as one of controlling authority ; and at most, neither this case nor either of the others which follow and depend upon it, is authority for the proposition that a will can be admitted to probate more than thirty years after the death of the maker.

2. The jury should have been instructed that, in determining the question whether or not, when Sarah Pendergast executed the paper purporting to be a will, she had legal capacity to make a will devising land, they had no right to consider as evidence of such capacity the fact that she executed the paper. The appellant submits that no presumption of any sort arises, and that the jury should have been instructed that the fact that

a paper was executed had no tendency to show that its maker had legal capacity to execute it.

*B. F. Butler & P. Webster*, for the executor.

DEVENS, J.   The first question discussed by the appellant is whether the Probate Court has authority, as matter of law, to admit a will to probate sixty-three years after the death of the testator, and incidentally whether there is any limit of time after the death of the testator subsequent to which the court has no such authority.

In *Shumway* v. *Holbrook*, 1 Pick. 115, 117, the question was whether a will not admitted to probate was admissible in evidence.   It was held that it was not, but it is said: "If a will can be found, it may be proved in the Probate Court at any time, in order to establish a title to real estate.   It differs from an administration of personal property, which cannot be originally granted upon the estate of any person after twenty years from his decease."   In the course of the argument Mr. Justice Jackson alluded to a case in Essex County perhaps thirty years before, where it was found that a widow "must hold land under the will which had not been proved."   The will having been offered for probate, the judge of probate declined to allow it, as more than twenty years had elapsed since the death of the testator, and on appeal his decision was reversed and the will admitted to probate.   The research of the counsel for the defendant has established that the case thus alluded to was that of *Bourne* v. *Greenleaf*, Essex, 1802; *S. C.* cited 1 Pick. 117, note; and has supplied us with as satisfactory an account of it, drawn from the papers on file, as they will afford.   It is a case to which some weight must be attached, as it brought into question directly the authority of the Court of Probate, and the appeal was to the full bench of the Supreme Court, which reversed the original decree.   While no opinion appears to have been written, it could not but have been a carefully considered case, as it reversed the opinion of the judge of probate as to the extent of his jurisdiction.   The will thus admitted to probate was so admitted thirty-six or thirty-seven years after its date.   How long after the death of the testator does not clearly appear, although some of the papers found indicate that it was more than thirty years after.

In *Marcy* v. *Marcy*, 6 Met. 360, 370, the question was whether there was sufficient evidence that a will which became operative forty-three years before had been admitted to probate so that it could be read in evidence. The court held that there was such evidence, adding, " On evidence like the present, it would be the duty of the Probate Court to establish the will, if, for want of form, the probate should have been considered so defective that the will had been rejected as evidence in its present state."

In *Waters* v. *Stickney*, 12 Allen, 1, where it was held that the Probate Court, fourteen years after admitting a will to probate, might admit to probate a codicil written upon the same leaf, which had escaped attention and was not passed upon at the time of the probate of the original will, it is said by Mr. Justice Gray, citing the above cases, " It has been directly adjudged by this court that a will may be proved even thirty years after the death of the testator, although original administration could not by statute be granted after twenty years"; and again, " If no will had been proved, the lapse of time would not prevent both will and codicil from being proved now."

While it is true that in neither of these cases has it been decided that a will disposing of lands can be admitted to probate after sixty years, yet there is no suggestion in any of them that there is any limitation of time to such proof, and the language used is quite explicit to the contrary. In view of the decisions made, and the repeated expressions directly relevant to the cases considered used in argument by judges of this court, we cannot treat this inquiry, as the defendant desires we should, as practically a new question. We must deem it one that has been fairly passed upon and decided.

It may be that the inconveniences which might arise from the probate of a will many years after the death of the testator are such that a statute limiting the period might be properly enacted. That course has in some States been adopted. Conn. Gen. Sts. 1875, tit. 18, c. 11, § 11. Maine Rev. Sts. c. 64, § 1. But statutes of limitation are arbitrary, and the considerations which apply to positive laws of this character are legislative rather than judicial. In every instance where a great length of time has elapsed after the death of a testator, possessory titles may have been acquired which will prevail against the record. What is due to

the just rights of the devisees is to be considered with reference to other rights of property, or to the repose of the community, but such considerations belong to the domain of legislation.

So long as one can produce the evidence necessary to obtain the probate of a will, we can see no legal reason why one who relies upon it should not be allowed to prove it as he would be permitted to prove a deed, however ancient, under which he claimed title. The fact that he could not offer in evidence a will not admitted to probate, as he might an ancient deed, would certainly afford no reason why its authenticity should not be established in the Probate Court by its regular course of procedure.

The appellant further contended that the jury ought not to have been allowed, in determining the question whether the testatrix was a widow and thus competent to make a will as the law stood in 1807, to consider the fact that she actually executed a paper purporting to be a will devising land as any evidence that she had legal capacity so to do. This fact, in connection with the other facts proved, was competent to be considered. There was no ruling that alone it would have been sufficient to establish her legal capacity, that is, that she was at the time a widow. There was evidence of reputation that the husband of the testatrix died soon after their marriage; that a deed was made to her on December 21, 1801, of the very land which she undertook to dispose of by will, in which she was described as "Sarah Pendergrass, widow," which deed was found among her papers; and that she executed the will by the same name as that recited in the deed in which she was described as widow, although that word is not appended to her name in the will. The act done by her of disposing, or assuming to dispose, of her property, which she could only lawfully do if a widow, was an assertion of her status, and thus of her legal capacity, made in an important transaction, which might properly have been considered in connection with the other evidence.

The conclusion we have reached renders it unnecessary to decide whether the appellant was lawfully entitled to appeal. Other exceptions taken by it were waived in this court.

*Cause to stand for further proceedings.*