MATTHEWS *v.* FULLER

[No. 56, October Term, 1955.]

44

*Decided February 13, 1956.*

Before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

Submitted on brief by *James C. Mitchell* for the appellant.

Submitted on brief by *Robert T. Barbour* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

Lawrence Matthews, the appellant, as the devisee under the will of Amelia Roy, of certain land in Charles County, Maryland, brought a suit in ejectment in 1953 against Clara Josephine Fuller, the appellee, who had purchased the land in question from the heirs of Amelia Roy in 1944 in ignorance of the existence of any will of the decedent. Judgment was entered for the defendant and the plaintiff appealed.

The facts are not in dispute, and briefly are these:

Amelia Roy, a resident of Charles County, died on April 25, 1944, being seized and possessed of fee simple title to the tract of land in question, containing twenty and three quarters acres, more or less, with improvements thereon, located in that County. On June 20, 1944, her sister, Mamie Boston, applied for letters of administration in the Orphans' Court for Charles County, stating in the petition that she had made a diligent search, but

had found no will of the decedent, and that Amelia Roy had died intestate and that her heirs at law were the petitioner, the said Mamie Boston, and Eleanor Thompson and Georgie Berry, a niece and nephew respectively of the said Amelia Roy, both of whom resided in Philadelphia, Pennsylvania.

On the same day as the petition was filed, the Orphans' Court passed an order finding that Amelia Roy had died intestate, and granting letters of administration to Mamie Boston. The estate was closed by a final Administration Account passed January 16, 1945, showing no personal property but payment of bills and administration costs totaling $127.40 and collateral inheritance tax on the real estate in question in the amount of $110.45.

By deed dated September 9, 1944, and recorded January 29, 1946, among the Land Records of Charles County, Maryland, Mamie Boston and Alexander Boston, her husband, and Georgie Berry and Eleanor Thompson, both unmarried, who were described in the deed as the heirs at law of Amelia Roy, who died intestate, conveyed to Clara Josephine Fuller, the appellee, the land in question for a consideration of $1,800.

On February 5, 1952, Thomas C. Carrico, an attorney in La Plata, Md., who had taken over the former office of a deceased member of the Bar, discovered in some of the former occupant's old files a paper writing dated January 16, 1936, purporting to be the Last Will and Testament of Amelia Roy, and filed it with the Register of Wills for Charles County. By this paper Amelia Roy bequeathed one dollar ($1.00) to her sister Mamie Boston and one dollar ($1.00) to her sister Carrie Anderson and gave all the rest and residue of her estate, including the real estate here in controversy, to her cousin Lawrence Matthews, the appellant in this case.

After the prescribed notices to parties in interest, the Orphans' Court for Charles County passed an order on September 2, 1952, admitting to probate as the Last Will and Testament of Amelia Roy the aforesaid paper writing of January 16, 1936.

The appellant waited until limitations had run on the time for filing a caveat and then instituted the ejectment suit against the purchaser from the heirs at law of the decedent.

It is agreed that none of the parties in interest had any knowledge whatsoever of the existence of a will of the decedent prior to the discovery of the document in 1952; and hence there can be no possible basis for any idea of concealment of the will. There is likewise nothing to suggest laches on the part of the appellant. No fault can be ascribed to either of the parties or to the heirs for the unfortunate situation which has developed, in which one of two innocent parties must suffer.

The question is which one: the devisee under a will which, through no fault of his, was not discovered and probated until nearly eight years after the death of the owner; or the grantee, who, in the interim, became a *bona fide* purchaser for value from the heirs at law of the owner, who was supposed by both the heirs and the purchaser to have died intestate, and upon whose estate letters of administration had been granted on a finding of the Orphans' Court that she had died intestate.

This case falls in a blank spot in the testamentary statute law of this State and is one of first impression in this Court. Similar cases have apparently arisen only infrequently in the highest courts of other States, and there is a division of authority. See annotation in 22 A. L. R. 2d 1107, *et seq.*, and cases therein cited. A number of the cases in other States have involved some additional elements which affected the decision—perhaps, laches, estoppel or a statute having either a direct effect, such as one specifically undertaking to protect the *bona fide* purchaser, or having an indirect effect, such as a statute of limitations or a statute to prevent the concealment or withholding of wills. As stated above, we have no statute dealing specifically with the relative rights of the innocent purchaser from heirs supposed to have title and of the devisee named in a belatedly probated will.

We have no statute of limitations fixing the time within which a will must be offered for probate. *Sewell v. Slingluff,* 57 Md. 537, at 554-555; *Bagby, Maryland Law of Executors and Administrators,* 2nd Ed. (1927), Sec. 24. We do have a statute making it an offense to neglect "wilfully" for a period of three months after knowledge of the death of a decedent, to deliver his will to the register of wills or to the executor therein named (Code (1951), Article 93, Sec. 370), but this has no application in the present case. Sections 151, 152 and 408 of Article 27 of the Code (1951 Ed.) are also inapplicable. They define as offenses, and impose penalties for, stealing or altering a will (Section 151), destroying or secreting a will delivered to a person for safe-keeping (Section 152) or larceny of a will (Section 408). These statutes do, however, support the statement in *Pilert v. Pielert,* 202 Md. 406, 96 A. 2d 498, that "Public policy demands that the probate of wills should be made speedily." Section 370 of Article 93 and Section 408 of Article 27 are both derived from Chapter 101 of the Acts of 1798, which is the source of much of our present testamentary law.

Section 1 of sub-chapter 1 of Chapter 101 is included in Section 343 of Article 93 of the Code (1951). As then enacted (subsequent amendments not being material in the present case) it provided that "All lands, tenements and hereditaments, which might pass by deed, or which would, in case of the proprietor's dying intestate, descend to, or devolve on, his or her heirs or other representatives, except estates tail, shall be subject to be disposed of, transferred and passed, by his or her last will, testament or codicil, under the following restrictions." (The next three sections were concerned with restrictions upon, and requirements of, valid wills.)

In *Johns v. Hodges,* 62 Md. 525, one of the questions presented turned on the effect of the probate or denial of probate of a will disposing of real estate under Chapter 315 of the Acts of 1831, which had amended Chapter 101 of the Acts of 1798. By Section 1 of the Act of 1831 the probate of wills of personalty, or realty, or both were

put upon the same footing, except that "said probate as concerns real estate, shall be deemed and taken only as *prima facie* evidence of such will * * *." In that case a will had previously been contested and the caveat had been sustained and probate had accordingly been denied. The devisee under the will sought to relitigate its validity, and relied upon the proviso above quoted. This contention was rejected, and the denial of probate, as distinguished from the grant thereof, was held conclusive as to real estate, just as it was with regard to personal property.

That proviso has long since disappeared, but *Johns v. Hodges* is still of interest for its discussion of the history and development of our law with regard to probate. At page 534, the court said: "Before the Act of 1831, Ch. 315, the probate affected only wills of personal estate. The Act of 1798 made no provision for wills of real estate being proved or contested; but that Act did make provision for the custody of such wills by the Register of Wills, and for the punishment of any person who should fail to deliver a will left in his custody to the Register within a certain number of months. If a will of personal estate was refused probate, it could not be offered for probate, by express provision of the statute, in any other county; but the right of appeal was given, and the decision of the appellate tribunal was made conclusive. * * * The question here is, shall the same rule be applied to wills of real estate under the Act of 1831, or the Code which retains its provisions * * *?" At page 536 the Court also said: "Probate being provided for and its contest carefully secured, it must have been intended to make probate a condition precedent to the instrument being used as a will for any purpose. If probate was not necessary why not sue in ejectment at once, without tendering it for probate?"

The Court (at page 537) explained the proviso making the probate of the will *prima facie* evidence only in favor of the devisee as due to the "favor with which the law has always regarded the heir" and the ancient doc-

trine of worthier title, which regarded title by descent as more honorable than title by purchase (which, of course, included title by devise). The abolition of the proviso may have wiped out this preference, but the requirement of probate (aside from questions such as fraud, concealment or estoppel) still exists as a condition precedent to the will being used as such.

It is, of course, true that the title of a devisee to real estate generally relates back, upon probate of the will, to the date of death of the testator. It is also true that administration upon the estate of a decedent can be granted upon the basis of intestacy only if his dying intestate is either "notorious" or is proved to the satisfaction of the Orphans' Court. Code (1951), Article 93, Section 19; *Stouffer v. Stouffer*, 110 Md. 368, 72 A. 843. Also, although the grant of letters is said to be a judgment *in rem*, it does not prove intestacy if a will is later offered for probate (*Emmert v. Stouffer*, 64 Md. 543, 3 A. 293, 6 A. 177; *Bagby, Maryland Law of Executors and Administrators*, 2nd Ed., Sec. 36) ; and if letters of administration have been granted, but a will is later proved, the executor therein named may obtain letters testamentary and the grant of such letters to him "shall be construed as a revocation of the letters of administration." Code (1951), Article 93, Section 39.

It is to be noted, however, that under Section 40 of the same Article, the acts of the administrator, done according to law, before any actual or implied revocation of his letters, shall be valid and effectual.

Section 119 of Article 93 provides that if any decedent, resident or non-resident of this State, who has been dead for not more than twelve years, leaves one or more parcels of real estate, but, so far as may be known, no personal estate, in Maryland, the Orphans' Court of the county or city in which such real estate, or a part of it, is located may grant letters testamentary or of administration on the estate of such decedent and may direct that notice by publication be given to creditors. It then provides that "No purchaser of such real estate shall be

required to accept title thereto unless such notice has been given as is authorized by this section and until the period for the filing of such claims has expired; and no claim not filed within the period specified by such notice to creditors shall thereafter be asserted against such real estate in the hands of a purchaser for value." This section does not refer to the devisee under an unknown and unprobated will, but it does apply whether the decedent died testate or intestate. It seems by its silence with regard to devisees under unknown wills of supposed intestates to assume that a *bona fide* purchaser must be on guard against creditors of the decedent, but not against such possible devisees. There seems to be a positive implication from the negative wording of the statute that if the rights of creditors are protected, the *bona fide* purchaser may be required to take title. If he must take it subject to the possible claims of a devisee under an unknown will, such a requirement could easily operate as a trap; and we cannot suppose that the statute was intended to have any such effect. Section 119 is not a statute of limitations in the usual sense. It allows action to be taken before so many years elapse; it does not bar rights by the lapse of time.

We think that the provisions of Code (1951), Article 81, Sections 101-103, throw some light on the question of public policy here involved. Those Sections deal with the matter of parties defendant in proceedings to foreclose the right of redemption under a tax sale. Paragraphs (a) and (b) of Section 101 require that the defendants shall be the owner of the property, or if the property is subject to a ground rent, the owner of the fee simple title and the owner of the leasehold title, "as disclosed by a search of the Land Records of the County, of the records of the Register of Wills of the County, and of the records of any court of law or equity of the County." Paragraph (c) requires the joinder of "Any mortgagee of the property or his assignee of record named as such in any unreleased mortgage recorded among the Land Records of the County." Paragraph (d)

permits the State to be joined, and the concluding (unlettered) paragraph of the Section makes it unnecessary to join any other persons having or claiming to have any right, title, interest, etc. in or to the property, and permits them to be included as defendants and proceeded against by publication under the designation of "all persons having or claiming to have any interest in [the] property" involved, which is to be described substantially as in the Collector's tax bill.

Section 102 deals with cases in which the owner or owners cannot be determined as provided in Section 101, and permits proceedings to be taken against the unknown owner, his heirs, devisees, personal representatives, and more remote parties. Section 103 requires an affidavit of search of the records which are specified in Section 101, and that search must go back for a period of at least forty years immediately prior to the institution of a suit under Section 102.

These provisions clearly put great emphasis upon what the public records disclose, and permit the holder of a tax sale certificate to rely upon facts which may be ascertained from those records. This is in accord with the general policy of recording statutes.

Thus, if the records of the Orphans' Court show the intestacy of a deceased former owner, the holder of the tax certificate must join his heirs; but there is no provision for reopening the case if a will should later be found and be probated. Likewise, there is no requirement for deferring foreclosure for some specified time after the death of a former owner in case a will should be offered for probate during the interim. The finding of intestacy in the Orphans' Court stands as something upon which the certificate holder may rely in order to perfect his title.

The appellant relies upon the case of *Haddock v. Boston & Maine R. Co.*, 146 Mass. 155, 15 N. E. 495, in which a railroad company sought unsuccessfully to prevent the probate of a will some sixty-three years after the death of the testator, claiming that title to certain real estate

of the railroad might be affected thereby. The Supreme Judicial Court of Massachusetts took the view that it was purely a matter for legislative action whether a period of limitations should or should not be imposed within which a will might be probated. If the decision were limited to a holding that, in the absence of a statute of limitation, a will might be probated at any time, it would be in accord with, and would not go beyond, *Sewell v. Slingluff*, 57 Md. 334, already cited. We think, however, that *Haddock v. Boston & Maine R. Co.* does go further; and a view upholding the claim of the devisee has been taken in some other States. See the annotation, 22 A. L. R. 2d 1107, above cited.

*Wright v. Eakin*, 151 Tenn. 681, 270 S. W. 992, meets head on the same problem with which we are confronted, and the Supreme Court of Tennessee upheld the rights of the innocent purchaser from the heir of a supposedly intestate decedent. The Court cited 3 *Washburn on Real Property* [6th Ed.], Section 1857, in support of the rule that "if the estate of the deceased was a fee, the law presumes that it descended to the heirs at law, unless a devise thereof is affirmatively shown. * * * The intestacy is presumed until the contrary is proved." It then went on to say: "The presumption being in favor of intestacy, and in favor of the heir at law, one dealing with the heir in good faith under circumstances such as are here presented should be protected." Although it may be difficult to determine whether or not any such presumption exists in Maryland today, it would be in accord with the old rule favoring the heir, which was spoken of in *Johns v. Hodges, supra.* The Tennessee Court summarized its conclusion in this way: "To hold that a title acquired by a *bona fide* purchaser from the heir a reasonable time after his ancestor's death, no will of the ancestor having appeared, could be defeated by a will turning up and being admitted to probate years thereafter would be disturbing and contrary to familiar and long settled policies of the law."

The Supreme Court of Wisconsin had before it a similar controversy in *Simpson v. Cornish,* 196 Wis. 125, 218 N. W. 193, though the will there relied upon had originally been offered for probate in another State in 1914 and had been rejected. Proceedings for the administration of the decedent's estate based upon his intestacy were had and completed in Wisconsin, and the purchasers acquired title through the supposed heirs. Some years later further proceedings were had in Illinois as a result of which the will was there admitted to probate. An authenticated copy was thereafter recorded in Wisconsin. The controversy was between devisees under the will and parties claiming through the heirs of the decedent. The Supreme Court of Wisconsin said: "When an application is made to a probate court for the appointment of an administrator, there is involved, from the very nature of the proceeding, the question of intestacy, and the appointment of an administrator determines the non-existence of a will and that the deceased died intestate. As has been already stated, there is no statute in this state limiting the time when a will may be presented or admitted to probate. It is the policy of the law to encourage the free and unrestricted alienation of property. To hold that a *bona fide* purchaser, under the circumstances in this case, cannot rely upon an adjudication of intestacy or upon a final decree, would have a tendency, for an unlimited time, in effect, to suspend the power of alienation. As has heretofore been said, the wishes of a testator as expressed in his will must be given effect regardless of the time when the will is discovered and probated. A duly executed will may never be discovered, or it may be discovered after the lapse of many, many years. If the rule contended for by plaintiffs' counsel be adopted by this court (and the question is a new one in this jurisdiction), then the title to all property passing under the intestate laws of this state may be involved under a cloud which will effectually restrict its alienation and which will vitally affect the value of the real estate. Laws are created for the bene-

fit of man and for the protection of his property. To afford a *bona fide* purchaser like in the instant case legal protection, will not only result in the adoption of a just and equitable doctrine as far as individuals and property are concerned, but will also result in a recognition and establishment of a broad public policy."

More recently a similar question was presented in *Eckland v. Jankowski,* 407 Ill. 263, 95 N. E. 2d 342, 22 A. L. R. 2d. 1102. (It is followed in A. L. R. 2d by the annotation above referred to.) The appellant in that case was the devisee under a belatedly probated will and the appellees were purchasers from the heirs. The Court said: "At the time appellees obtained a conveyance to the premises, there was nothing upon record which would give them actual or constructive notice of the existence of the will, or that anyone other than those persons designated by the Statute of Descent had any interest in the premises. An examination of the records in the recorder's office would then have disclosed that Thorwald Hegstad was the owner of the record title at the time of his death and would show no transfers from him. Appellees were bound to know the law with reference to the descent of property. The records of the probate court at that time disclosed that Thorwald Hegstad had died intestate, and a finding of his heirship was included in the administration proceedings. The claims against the estate of the decedent were paid and the administrator discharged. Under the Statute of Descent, the heirs-at-law of Thorwald Hegstad had succeeded to the ownership of his real estate. The Will of Thorwald Hegstad was not discovered until several months after the real estate had been conveyed by his heirs. There was no notice, either actual or constructive, as to the existence or contents of the will. Appellees had the right to rely on the devolution of title shown by the record. Under the facts and circumstances appearing of record, we conclude that a conveyance to appellees, who are admitted to be *bona fide* innocent purchasers for value, should prevail as against appellant, a devisee in the

will subsequently discovered and admitted to probate." See also *McCormick v. Sullivant,* 10 Wheat. (U. S.) 192, in which the contest was over the ownership of land in Ohio and was between persons claiming under the heirs of the deceased owner and devisees under his will, which was probated in another State. It appears that even at the time of suit no authenticated copy of the will had been recorded in Ohio. The appellants asked that, if the decision of the lower court should be affirmed, the affirmance should be "without prejudice." The Supreme Court refused this request, saying: "Even if an authenticated copy of Crawford's will should hereafter be offered for probate, and admitted to record in the State of Ohio, still, the title to be derived under it could not be permitted to overreach the legal title of this defendant, founded, as it is, upon an equitable title, acquired *bona fide,* and for a valuable consideration paid, which purchase, payment and acquisition of legal title were made before he had either legal or constructive notice of the will, or of the claim of the daughters, for we are all of opinion that the probate of the will in Pennsylvania cannot be considered as constructive notice to any person of the devise of the lands in controversy."

We think that these cases are in accord with the recognized public policy of this State in favor of the prompt probate of wills *(Pilert v. Pielert, supra)* and of the avoidance of all unnecessary delays in the settlement of decedents' estates, which was pointed out in *Hunter v. Baker,* 154 Md. 307, 141 A. 368. In that case an effort was made to have an order revoked some months after its passage. This Court said: "While the statute does not provide within what time a petition must be filed for the revocation of an order or decree passed by the orphans' court, this court, while recognizing that a petition to revoke is a proper proceeding, has applied by analogy the period within which appeals are allowed by the statute."

We agree with the Chancellor that the rights of the *bona fide* purchaser from the supposed heirs should be

protected as against the claim of the devisee under the later discovered and later probated will, and the judgment will, therefore, be affirmed. What rights the devisee may have against the heirs is not before us in this case.

*Judgment affirmed, with costs.*