880 A.2d 343

**Shirley L. DOWNES**

v.

**Gregory DOWNES.**

**No. 112, Sept. Term, 2004.**

Court of Appeals of Maryland.

Aug. 15, 2005.

562

Andrea Leahy-Fucheck (Richard J. Magid, Christopher B. Lord, Whiteford, Taylor & Preston LLP, Baltimore, on brief), for petitioner.

Charles W. Collett, Easton, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE *, JJ.

* Greene, J., participated in the oral argument but did not participate in the decision or the adoption of this Opinion.

WILNER, J.

Maryland Code, § 3–203 of the Estates and Trusts Article (ET), permits the surviving spouse of a decedent to take a certain share of the decedent's net Estate—one-half or one-third, depending on whether there is surviving issue—in lieu of property left to the spouse by the decedent's Will. ET § 3–206 and Maryland Rule 6–411 set a time deadline on the making of that election, however. The deadline relevant to this case was seven months after the date of the first appointment of a personal representative under the Will. It has since been changed to the later of nine months after the date of the decedent's death or six months after the first appointment of a personal representative under a Will.

Both the statute and the Rule permit the orphans' court to grant extensions of that deadline. ET § 3–206(a)(2) provides that the court "may extend the time for election, *before its expiration,* for a period not to exceed three months at a time, upon notice given to the personal representative and for good cause shown."[1] (Emphasis added). Rule 6–411(c) provides that, "[w]ithin the period for making an election," the surviving spouse may file a petition for an extension of time, and that "[f]or good cause shown, the court may grant extensions not to exceed three months at a time, *provided each extension is granted before the expiration of the period originally prescribed or extended by a previous order."* (Emphasis added).

The question before us is whether an orphans' court, or on appeal from that court, a circuit court, has any discretion to grant an extension when the request therefor is not made within the period originally prescribed or extended by a previous order. The Orphans' Court for Talbot County, the Circuit Court for that county, and the Court of Special Ap-

---

1. At the time of the relevant events in this case, that provision appeared in an undivided ET § 3–206(a). In 2003, that subsection was split, and the authority to extend the time for making an election was placed in § 3–206(a)(2). There was no change in substance.

peals all held that there was no such discretion. We agree with that conclusion and shall therefore affirm.

## BACKGROUND

Petitioner, Shirley Downes, is the surviving spouse of Eldridge Downes IV, who died, testate, on October 23, 1997.[2] In his Will, Eldridge left all of his tangible personal property to Shirley and named her as his personal representative. He also created two trusts—a marital trust for Shirley's benefit in an amount equal to the maximum marital deduction available for Federal estate tax purposes and a residuary trust for the benefit of his parents and his son, Gregory. On November 3, 1997, the Orphans' Court admitted the Will to probate and, pursuant to the Will, appointed Shirley as personal representative. In February, 1998, Shirley filed an Inventory and Information Report that showed the value of the Estate to be $1,729,517.

On June 2, 1998—one day prior to the then seven-month deadline for her to decide whether to renounce the Will and take her statutory share of the Estate—Shirley, acting *pro se,* filed a petition for an extension of that time. She explained that the Inventory which, as personal representative, she had filed in February did not include the value of certain assets owned by Eldridge, that she was in the process of determining the value of those assets, and that the determination of that value would affect her personal decision whether to take her statutory share. She asked for a three-month extension which, on June 9, 1998, the court granted.[3] Later that month, she filed an amended Inventory showing the value of the Estate to be $2,052,228. In July, she asked for an extension of time to file the required Administration Account, citing her

2. Because the decedent, petitioner, and respondent share the last name, Downes, we shall occasionally, for convenience and clarity in identification, refer to them by their first names. *See* Maryland Rule 8–111(b).

3. No issue has been raised as to the validity of that extension, which, though sought prior to the expiration of the initial seven month period, was not granted until after that period had expired.

inability to appraise closely held entities in the Estate. On August 27, 1998, Shirley, again acting *pro se,* filed a petition for a second extension of time to elect her statutory share. As before, she averred that the Inventories did not include all of the Estate's assets and that she was having difficulty valuing certain assets. On September 1, 1998, the court granted another three-month extension, to December 1, 1998.

On November 30, 1998—one day before the expiration of the current extension—Shirley, this time through counsel, filed a petition for a third extension. She stated that her late husband had an interest in three businesses—Tidewater Coffee, Inc., Raley Downes Services, Inc., and Ral–Do Industries, Inc.—that both the assets and liabilities relating to those businesses might be substantial, and that the value of the interests would have a significant impact on her decision whether to renounce the Will and elect her statutory share. She claimed that, due to a lack of cooperation on the part of those businesses, two of which were in New Jersey, she had been unable to determine the value of the assets or the extent of the liabilities. On December 1, the court granted another three-month extension, until March 1, 1999. On February 24, 1999, again through counsel, Shirley requested a fourth extension, for the same reason. On March 2, the court granted the extension, until June 2, 1999.

During the period of that fourth extension, as to which no challenge is made, Shirley filed an amended Inventory showing Estate assets of $1,963,478, to reflect a decline in the value of certain corporate stock. She also filed her First Administration Account, charging herself with a gross Estate of $3,461,969. On March 22, she filed a supplemental Inventory that added $1,498,490 to the value of the Estate, bringing the total to $3,461,969—the value reported in the First Administration Account. That supplemental Inventory included a value of $374,400 for the decedent's interest in Ral–Do Industries, Inc. and a value of $325,000 for his interest in Raley Downes Services, Inc. The Inventory noted that the third business—Tidewater Coffee, Inc.—was insolvent and was disputing the extent of the decedent's interest.

For whatever reason, Shirley allowed the fourth extension to expire. On June 24, 1999—twenty-two days after the expiration of the extension period—she filed a petition for a fifth extension. Notwithstanding the values assigned in the last supplemental Inventory, she again asserted that she had been unable to determine the value of her husband's interest in the three companies. She added, as well, an assertion that, since the filing of the last petition for extension, the Estate "has been involved in litigation before the Circuit Court for Talbot County involving obligations of the decedent," but she did not further identify or explain the nature of that litigation. On July 6, 1999, the court, citing ET § 3–206(a), denied the petition. Shirley moved for reconsideration of that denial, claiming that she had substantially complied with the deadline requirement. In October, 1999, the court, citing *Simpson v. Moore*, 323 Md. 215, 228, 592 A.2d 1090, 1096 (1991), denied the motion, holding that the problem was not one of substantial compliance but of non-compliance with the statutory requirement.

Shirley did not seek any immediate review of the Orphans' Court's denial of her petition for fifth extension, but rather completed the administration of the Estate. On February 13, 2001, the court approved the Fifth and Final Administration Account showing a gross Estate of $3,228,701 and a net Estate after payment of taxes and expenses of $945,291. On March 15, 2001, she filed an appeal to the Circuit Court from the denial of her petition for fifth extension and her motion to reconsider that denial. Gregory, as sole surviving beneficiary of the residuary trust, moved to intervene in the Circuit Court action, noting that, if Shirley were permitted to renounce the Will, the value of the residuary trust would be decreased by about one-third. He also moved to dismiss the appeal as untimely, arguing that the denial of Shirley's request for a fifth extension constituted a final judgment and that an appeal should have been taken within 30 days after that order.

On November 15, 2001, the Circuit Court granted Gregory's motions to intervene in and to dismiss the appeal. The court concluded that the order of July 6, 1999 that denied Shirley's

petition for fifth extension was a final, appealable judgment under Maryland Code, § 12–502 of the Cts. & Jud. Proc. Article (CJP) and that her appeal from that order in March, 2001, was untimely. CJP § 12–502(a)(1) permits a party in the orphans' court to appeal from a final judgment of that court to the circuit court, in lieu of taking a direct appeal to the Court of Special Appeals. Section 12–502(b) requires that the order for appeal be filed with the register of wills within 30 days after the date of the final judgment from which the appeal is taken.

Shirley then appealed to the Court of Special Appeals which, in an unreported Opinion filed November 14, 2002, reversed the Circuit Court ruling. The intermediate appellate court concluded that the effect of the July, 1999 order was simply "to preclude [Shirley] from electing an alternative method of calculation" and that nothing in that order "suggests a final adjudication of [Shirley's] claim, or even a specific valuation as to [Shirley's] award." Because that order did not finally adjudicate her claim in regard to the Estate, it was not immediately appealable. The final, appealable judgment, the court held, was the order approving the Fifth and Final Administration Account. The case was thus remanded to the Circuit Court for further proceedings on Shirley's appeal.

On remand, Shirley focused not on whether the *Orphans' Court* had the authority or discretion to excuse the late filing of the petition for fifth extension or to extend the deadline for the filing of that petition, but rather whether the *Circuit Court* had that discretion or authority. She did not, in other words, argue error on the part of the Orphans' Court but addressed only what the Circuit Court should do. In that regard, she noted that an appeal under CJP § 12–502 was to be heard *de novo* by the Circuit Court, that it was to be treated as if it were a new proceeding without any judgment of the Orphans' Court, and that the Circuit Court was to "give judgment [according] to the equity of the matter." Her position was that she needed more time to determine whether to renounce the Will and that it would be inequitable for the court not to extend the deadline. She explained that the value

of the Estate grew significantly during the period of administration but that, under the terms of the Will, most of that added value went into the residuary trust rather than the marital trust, so that Eldridge's son, Gregory, rather than she, got the benefit of that increase.

The court was not impressed. It read what is now ET § 3–206(a)(2) as not allowing the court to grant a subsequent extension once the allowable period or current extension expired. The court noted that Shirley was aware of that fact, having complied with the requirement on four prior occasions, and observed that if the law created a harsh result, the remedy lay in a legislative change, not one crafted by the Judiciary.

Shirley appealed again, but this time the Court of Special Appeals, in a reported Opinion, affirmed. *Downes v. Downes*, 158 Md.App. 598, 857 A.2d 1155 (2004). Relying largely on *Barrett v. Clark*, 189 Md. 116, 54 A.2d 128 (1947) and *Bunch v. Dick*, 287 Md. 358, 412 A.2d 405 (1980), the intermediate appellate court held that the period prescribed in ET § 3–206 for extending the time for a spousal election may not be enlarged by either an orphans' or circuit court. It rejected Shirley's argument that a circuit court had greater authority in this regard than an orphans' court, either under the Maryland Rules or under equitable principles, and declared that "if a surviving spouse does not file a petition for extension of time within the originally prescribed period or, as here, the previously extended period, the spouse is foreclosed from thereafter obtaining additional time to make the election." *Downes v. Downes, supra*, 158 Md.App. at 610, 857 A.2d at 1161. We granted *certiorari* to consider the single question of whether an orphans' court, or a circuit court in a *de novo* appeal, has discretion to accept a surviving spouse's petition for extension of time to make an election under ET §§ 3–203(a) and 3–206(a) and Maryland Rule 6–411(c) when the petition seeking the extension is filed after the previous election period has already expired.

## DISCUSSION

■ The issue is one of statutory construction—the meaning of what is now ET § 3–206(a)(2) and its counterpart, Maryland Rule 6–411(c)—both intrinsically and in relation to certain other Rules and common law principles. Shirley acknowledges that both the statute and the Rule, on their face, require that any extension, whether an initial or a subsequent one, be granted by the court prior to the expiration of the preceding allowable period. Necessarily, she further concedes, that requires that any petition for such an extension must be filed prior to that expiration. She argues, however, that that directive is merely directory, not mandatory or jurisdictional in nature, and that the Circuit Court, at least, had discretion to extend the time for filing the petition and thus to excuse an untimely filing. Gregory, on the other hand, contends that the statute and the Rule mean precisely what they say and that the time limit for seeking or obtaining an extension is jurisdictional in nature and therefore mandatory. He points out, in support of that view, that statutes relating to decedents' Estates generally, and statutes relating to a spouse's right to renounce a Will and elect a statutory share of the Estate in particular, are strictly construed.

■ We have stated the controlling principles of statutory construction so often that only the briefest exposition is necessary. Our predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself. If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written and in a commonsense manner. We do not add words or ignore those that are there. If there is any ambiguity, we may then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created. *See generally State v. Glass*, 386 Md. 401, 409–10, 872 A.2d 729, 734 (2005); *Piper Rudnick v. Hartz*, 386 Md. 201, 218, 872 A.2d 58, 68 (2005); *Montgomery*

*Cty. Board of Ed. v. Mann Insurance,* 383 Md. 527, 544, 860
A.2d 909, 919 (2004).

■ In this case, the words of the statute and Rule, as
applicable to the orphans' courts, are clear and unambiguous.
ET § 3–206(a)(2) permits an orphans' court to "extend the
time for election, *before its expiration,* for a period not to
exceed three months at a time." (Emphasis added). Rule 6–
411(c) is even more specific. It permits a surviving spouse to
file a petition for extension of time "[w]ithin the period for
making an election" and allows the orphans' court, for good
cause, to grant extensions up to three months at a time
"provided each extension is granted before the expiration of
the period originally prescribed or extended by a previous
order." [4] The authority of the orphans' court to grant an
extension beyond the initial period allowed for the making of
an election and beyond the period allowed in any extension
previously granted is thus clearly conditioned on a request for
the extension being filed with the court prior to the expiration
of the most recent allowable period.

Three questions flow from that limitation: first, does it
apply to the circuit courts in the context of a *de novo* appeal
from the orphans' court and, if not, what, if any limitations do
apply in that setting; second, if the limitation stated in the
statute and Rule *does* apply in the circuit court, is it mandato-
ry, in either a jurisdictional or non-jurisdictional sense, or is it
merely directory or declaratory in nature and, as a result,
permits the court to excuse an untimely petition and grant an
extension *nunc pro tunc;* and third, if the requirement,
intrinsically, is mandatory in nature, are there any extraneous
provisions that might serve to supply a discretion, not appar-
ent in the statute or Rule, that would allow a court to grant a
late-filed request for extension?

---

4. It is clear that those provisions, on their face, apply only to the
orphans' courts. Maryland Rule 6–105 applies to the title 6 Rules the
definitions contained in ET § 1–101. ET § 1–101(f) provides that the
word "court" is defined in § 2–101. Section 2–201 defines "court" as
the orphans' court.

As we have observed, CJP § 12–502(a)(1) provides that an appeal to a circuit court is to be heard *de novo*, "as if there had never been a prior hearing or judgment by the orphans' court," and that judgment is to be given "according to the equity of the matter." Does that mean that the circuit court is not bound by the limitations set forth in ET § 3–206(a)(2) or Rule 6–411(c) which, as noted, facially apply only to the orphans' court?

■ We think, and hold, that the circuit courts *are* bound by those limitations. The limitations are statutory ones that govern the exercise of a right that is conferred only by the statute.[5] The Legislature has decreed that the right must be exercised within a specific time after or before identified and ascertainable events—after the death of the decedent or the first appointment of a personal representative, before the expiration of any permissible extension previously granted by the orphans' court. The circuit court is, and must of necessity be, as bound by those limitations as the orphans' court. Otherwise, if a spouse could circumvent them by simply taking an appeal, they would have little practical meaning.

Such a rule of equivalence is mandated as well by what we said in *Estate of Soothcage v. King*, 227 Md. 142, 153, 176 A.2d 221, 227 (1961): "[I]n giving judgment 'according to the equity of the case,' the Circuit Court may enter any judgment which the Orphans' Court might properly have entered on the same evidence." If, as a result of the statutory limitations, the Orphans' Court could not have granted the fifth extension because the petition was untimely, neither could the Circuit Court have granted that extension. See also *Kaouris v. Kaouris*, 324 Md. 687, 715, 598 A.2d 1193, 1206 (1991) where, in discussing that statement from *Soothcage*, we noted that

---

5. Although the Rule parrots some of the procedural requirements for making an election, the underlying right of a spouse to take a share of an Estate in contravention of a Will and any substantive restrictions on the exercise of that right are, and must be, entirely statutory. The Court has no authority, by Rule, to create such a right on its own or to impose non-Constitutional substantive restrictions on a right that is, and may only be, created by the Legislature.

"the circuit court, although expected to make its own determination, is limited to those that could properly have been made by the orphans' court" and that it "does not exercise *its* plenary jurisdiction over the matter." The same point was made by the Court of Special Appeals in *Mercantile–Safe Dep. & Tr. v. Hearn*, 62 Md.App. 39, 47, 488 A.2d 202, 206 (1985), *cert. denied*, 303 Md. 360, 493 A.2d 1082 (1985):

"We think that a fair reading of *Estate of Soothcage* leads to the clear conclusion that Courts Art. § 12–502(a)(1) is not a carte blanche license to the circuit courts to disregard existing law. The phrase, 'give judgment according to the equity of the matter,' is a legislative reminder to the circuit courts that their capacity in appeals from orphans' courts is identical to that of the orphans' courts."

It follows that a circuit court has no greater ability to ignore the statutory restrictions imposed on seeking extensions of the time to make an election than does an orphans' court.

We turn, then, to whether an orphans' court has any authority to ignore the statutory limitation and excuse a late request. That invokes two issues raised by the parties: whether the statutory limitation is jurisdictional in nature, *i.e.*, whether the court has any "jurisdiction" to grant an extension when the petition seeking one is not timely filed; and, if not jurisdictional in nature, whether the limitation is merely directory, rather than mandatory, and thus allows the court some discretion to provide relief from it. In that regard, Shirley points to Maryland Rules 6–104 and 6–107 which, she argues, provide that discretion.

We do not regard the requirement as jurisdictional in nature, in the sense that our current case law has defined "jurisdictional." In *Carey v. Chessie Computer*, 369 Md. 741, 755, 802 A.2d 1060, 1068 (2002), we pointed out that, in earlier days, courts seemed more willing to view limitations on their authority or discretion as jurisdictional in nature, but that we had moved away from that approach, in part because of its consequences. An action in excess of a court's "jurisdiction" was regarded as utterly void, subject to being disregarded or

attacked at any time and by anyone. *See Fooks' Executors v. Ghingher*, 172 Md. 612, 619, 192 A. 782, 785, *cert. denied*, 302 U.S. 726, 58 S.Ct. 47, 82 L.Ed. 561 (1937). That characteristic of utter nullity, we noted in *Carey*, necessarily flowed from the very concept of the rule of law, but carried with it the prospect of serious mischief and thus required some circumscription.

■ The proper balance, we have concluded, is to view jurisdiction in terms of whether the court " 'is given the *power* to render a judgment over that class of cases within which a particular one falls.' " *See Carey v. Chessie Computer, supra,* 369 Md. at 756, 802 A.2d at 1069 (quoting *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 335, 322 A.2d 539, 543 (1974)). *See also Board of License Comm. v. Corridor Wine, Inc.,* 361 Md. 403, 417–18, 761 A.2d 916, 923–24 (2000). In furtherance of that approach, we have tended, whenever possible, to regard rulings made in violation of statutory restrictions on a court's authority or discretion as inappropriate *exercises* of jurisdiction, voidable on appeal, rather than as an inherently void excess of fundamental jurisdiction itself. *See also County Commissioners v. Carroll Craft,* 384 Md. 23, 44–45, 862 A.2d 404, 417–18 (2004).

The time limitation imposed by ET § 3–206(a)(2) is not a jurisdictional impediment. The orphans' court clearly has jurisdiction, in the fundamental sense, to extend the time allowed for a spouse to elect a statutory share. The requirement that an extension be granted prior to the expiration of the previously allowed period is merely a limitation on the exercise of that jurisdiction. If the court improperly grants an extension in violation of that limitation and a proper appeal is noted, its action will be reversed by the appellate court and all will be made right. To regard an improper extension as an excess of jurisdiction, however, would allow anyone at any time to challenge it. Years later, title to both real and personal property, even in the hands of innocent third parties, could be challenged. There is no need, and no justification, for an approach that might lead to that result.

The final question, then, is whether the limitation, though not jurisdictional in nature, is nonetheless mandatory, or whether, conversely, there is discretion in the court either to extend it or excuse its violation. In urging the latter, Shirley points to Maryland Rules 6–104(a) and 6–107(b). Rule 6–104(a) provides, in relevant part, that "[w]hen a rule, by the word 'shall' or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute" and that "[i]f no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule." Rule 6–107(a) permits an orphans' court or a register of wills, upon written request, to extend the time for filing an Inventory, an Information Report, an application to fix inheritance tax on non-probate assets, or an account. Rule 6–107(b) provides:

"Except as otherwise provided in this section, when these rules, an order of court, or other law require or allow an act to be done at or within a specified time, the court, upon petition filed pursuant to Rule 6–122 and for good cause shown, may extend the time to a specified date. The court may not extend the time for filing a claim, a caveat, or a notice of appeal or for taking any other action expressly prohibited by rule or statute."

We do not regard either of those Rules, or the combination of them, as permitting the court to ignore the clear limitation specified in ET § 3–206(a)(2) and Rule 6–411(c) and grant an untimely request for extension. As we have observed, both the statute and the Rule clearly prohibit an orphans' court from granting an extension after the previously allowable period has expired. Such action is therefore "expressly prohibited by rule or statute," thereby rendering the general authority conferred in Rule 6–107(b) inapplicable. As to Rule 6–104(a), the consequences of noncompliance with the limitation in ET § 3–206(a)(2) and Rule 6–411(c) are clear: an untimely request for extension must be denied. There is no other option.

Our predecessors presaged this conclusion in *Barrett v. Clark*, 189 Md. 116, 54 A.2d 128 (1947). At the time, the law barred a surviving spouse from electing dower or a statutory share in a decedent's personal estate unless, within 30 days after the expiration of notice to creditors, the spouse filed with the orphans' court or the register of wills a written renunciation of the Will. Another section, dealing with minor or incompetent spouses, permitted a guardian to file the renunciation and allowed the court to enlarge the time for filing "such renunciation," prior to its expiration.[6]  A widow, who was neither a minor nor an incompetent but, because of pending litigation that would significantly affect the value of the Estate to her, needed more time to decide whether to renounce the Will, asked for an extension. The Orphans' Court denied the request on the ground that it had no authority to grant it.

On appeal, the widow argued that the authority in the section otherwise dealing with minor and incompetent spouses to grant "such extensions" applied to all spouses. This Court disagreed and affirmed the decision of the Orphans' Court. We pointed out that the right of a surviving spouse to renounce a Will had always been strictly construed, and we concluded, based on normal rules of statutory construction, that the words "such renunciation" were intended to apply only to renunciations made by guardians on behalf of minor or incompetent spouses. We noted as well that it had always been the policy that Estates be administered and closed expeditiously and that the Legislature may have believed that extending the time for spouses generally to renounce might lead to delay and litigation in the settlement of Estates. We agreed that the Orphans' Court had no authority to enlarge the time for the widow to file a renunciation.

Shirley correctly points out that the law under consideration in *Barrett* was different from the law now before us, but it is a difference without a meaningful distinction.

---

**6.** At the time, the age of majority was 21, so the prospect of a minor spouse was perhaps more frequent than it is today.

Under the law construed in *Barrett*, there was *no* authority whatever to extend the statutorily-prescribed time for a competent, adult spouse to renounce the Will in favor of dower or a statutory share. Now there is, but only if the request for extension is filed before the current period expires.[7] When that period expires, the authority to extend it expires as well. The same underlying principles apply: there has been no retreat from the principle that the ability to renounce a Will in favor of a statutory share is to be strictly construed (*see Bunch v. Dick, supra,* 287 Md. 358, 412 A.2d 405), and the law still favors the expeditious administration and early settlement of Estates. *See Parshley v. Mott,* 241 Md. 577, 578, 217 A.2d 300, 301 (1966); *Thomason v. Bucher,* 266 Md. 1, 4, 291 A.2d 437, 439 (1972); *Matthews v. Fuller,* 209 Md. 42, 56, 120 A.2d 356, 363 (1956); *Ewell v. Landing,* 199 Md. 68, 72, 85 A.2d 475, 478 (1952). The three lower courts were correct in concluding that the Orphans' Court had no authority to grant the untimely request for a fifth extension.

**JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.**

BATTAGLIA, J., Dissents.

Dissenting Opinion by BATTAGLIA, J.

I respectfully dissent.

In this case we have been asked to decide if under Sections 3–203 and 3–206 of the Estates and Trusts Article and Maryland Rule 6–411(c), the Orphans' Court, or the Circuit Court on *de novo* appeal, has the discretion to accept a surviving spouse's fifth petition for extension of time to make a statutory election where the petition was filed after the previous election period had expired. According to the majority, both

---

7. In 1949, in response to the Court's decision in *Barrett,* the Legislature amended Art. 93, § 315 to provide that "[t]he time for renunciation by *any* spouse may be enlarged before its expiration by an order of the Orphans' Court." 1949 Md. Laws 369, § 1 (emphasis added); *see also Senk v. Mork,* 212 Md. 413, 419, 129 A.2d 675, 678 (1957). This statute is the predecessor of ET § 3–206(a)(2).

the language of Section 3–206 and Rule 6–411(c) are mandatory restrictions on the Orphans' Court's authority to grant extensions, and any requests for extension that are filed after the prior period has lapsed must be denied.

I disagree that the provisions of Section 3–206 and Rule 6–411(c) contain express language prohibiting the Orphans' Court from granting an extension request after the expiration of the previous election period. In my opinion, the language that the "court may extend the time for election, before its expiration" contained in Section 3–206(a) and the corresponding language in Rule 6–411(c) are discretionary or directory rather than mandatory in nature, so that the Orphans' Court may fashion an appropriate remedy for the late-filed request provided that the requesting party shows good cause warranting the extension. Neither the Orphans' Court, nor the Circuit Court on appeal, determined whether good cause existed to grant Mrs. Downes's request to extend the deadline to make a statutory election. Therefore, I would reverse the Court of Special Appeals and remand the case for further proceedings by the Orphans' Court to make such a determination.

Under Section 3–203(a) of the Estates and Trusts Article [1] a surviving spouse of a decedent may elect to take a statutory share of the decedent's net estate instead of property left to the spouse by the decedent's will. Section 3–206(a) provides the procedural deadlines for a surviving spouse to make that election, including any requests for extension of time to elect:

---

1. Section 3–203 states:

   (a) *General.*—Instead of property left to him by will, the surviving spouse may elect to take a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue.

   (b) *Limitation.*—The surviving spouse who makes this election may not take more than a one-half share of the net estate.

   (c) *Calculation of net estate.*—For the purposes of this section, the net estate shall be calculated without a deduction for the tax as defined in § 7–308 of the Tax–General Article.

   Md.Code (1974, 2001 Repl.Vol.), § 3–203 of the Estates and Trusts Article.

(a) *In general; extension.*—The election by a surviving spouse to take an elective share shall be made not later than seven months after the date of the first appointment of a personal representative under a will. The court may extend the time for election, before its expiration, for a period not to exceed three months at a time, upon notice given to the personal representative and for good cause shown.

Md.Code (1974, 2001 Repl.Vol.), § 3–206(a) of the Estates and Trusts Article. The broad purpose of the statute permitting the Orphans' Court to extend the time to make an election was designed to provide sufficient time to enable a surviving spouse to determine the condition of the estate and to make reasoned, informed decisions as to whether he or she should take under the will or the statutory share. *See* Md.Code (1957, 1969 Repl.Vol.), Art. 93 § 3–206, cmt. (stating "[i]t is felt that this [section] will provide sufficient time within which the surviving spouse may make an informed determination of whether or not the election should be made, and at the same time will facilitate the early settlement of estates"), recodified as Md.Code (1974, 2001 Repl.Vol.), § 3–206(a) of the Estates and Trusts Article.

Maryland Rule 6–411(c), its counterpart, contains the same operative provisions for extensions:

**Rule 6–411.  Election to take statutory share.**

**(c) Extension of time for making election.**  Within the period for making an election, the surviving spouse may file with the court a petition for an extension of time. The petitioner shall deliver or mail a copy of the petition to the personal representative. For good cause shown, the court may grant extensions not to exceed three months at a time, provided each extension is granted before the expiration of the period originally prescribed or extended by a previous order. The court may rule on the petition without a hearing or, if time permits, with a hearing.

The pertinent question is whether the Orphans' Court, or the Circuit Court on appeal, has any discretion to grant an extension when the request was not made within the time

prescribed by Section 3–206 and its corresponding Rule. This Court has often stated that our goal in interpreting statutes is to "identify and effectuate the legislative intent underlying the statute(s) at issue." *Ross v. State Board of Elections*, 387 Md. 649, 876 A.2d 692, 699 (2005); *Serio v. Baltimore County*, 384 Md. 373, 390, 863 A.2d 952, 962 (2004), quoting *Drew v. First Guaranty Mortgage Corp.*, 379 Md. 318, 327, 842 A.2d 1, 6 (2003), in turn quoting *Derry v. State*, 358 Md. 325, 335, 748 A.2d 478, 483 (2000). We have held that the principles applied to statutory interpretation also are used to interpret the Maryland Rules. *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 81 (2004); *Beyer v. Morgan State University*, 369 Md. 335, 350, 800 A.2d 707, 715 (2002); *Pickett v. Sears, Roebuck & Co.*, 365 Md. 67, 78, 775 A.2d 1218, 1224 (2001); *see generally Johnson v. State*, 360 Md. 250, 265, 757 A.2d 796, 804 (2000). Like construing a statute, to ascertain the meaning of a rule of procedure we first look to the normal, plain meaning of the language. *Davis*, 383 Md. at 604, 861 A.2d at 81; *Luppino v. Gray*, 336 Md. 194, 204 n. 8, 647 A.2d 429, 434 n. 8 (1994); *Rand v. Rand*, 280 Md. 508, 511, 374 A.2d 900, 902 (1970); *Balto. Gas & Elect. Co. v. Board of Cty. Commissioners of Calvert County*, 278 Md. 26, 31, 358 A.2d 241, 244 (1976); *Johnson*, 360 Md. at 265, 757 A.2d at 804. If that language is clear and unambiguous, we need not look beyond the provision's terms to inform our analysis, *Davis*, 383 Md. at 605, 861 A.2d at 81; *Rand*, 280 Md. at 511, 374 A.2d at 902; *Johnson*, 360 Md. at 265, 757 A.2d at 804; however, the goal of our examination is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory or part of the Rules. *Davis*, 383 Md. at 604, 861 A.2d at 81; *Morris v. Prince George's County*, 319 Md. 597, 603–04, 573 A.2d 1346, 1349 (1990), citing *Dept. of the Environment v. Showell*, 316 Md. 259, 270, 558 A.2d 391, 396 (1989); *Harford County v. Edgewater*, 316 Md. 389, 397, 558 A.2d 1219, 1223 (1989). To that end, we must consider the context in which a statute or rule appears, including relevant legislative history. *Davis*, 383 Md. at 604, 861 A.2d at 81; *Mayor and City Council of Baltimore*

*v. Chase,* 360 Md. 121, 129, 756 A.2d 987, 991–92 (2000), citing *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 632 (1987); *Johnson,* 360 Md. at 265, 757 A.2d at 804. Also, where the language of a statute or rule is ambiguous, external evidence may be referred to for discerning the purpose of the legislature, including the bill's title or function paragraphs, relevant case law, and secondary sources. *Davis,* 383 Md. at 604, 861 A.2d at 81; *Moore v. Miley,* 372 Md. 663, 678, 814 A.2d 557, 567 (2003); *Comptroller of the Treasury v. Clyde's of Chevy Chase, Inc.,* 377 Md. 471, 483, 833 A.2d 1014, 1021 (2003); *Johnson,* 360 Md. at 265, 757 A.2d at 804; *Schuman, Kane, Felts & Everngam, Chartered v. Aluisi,* 341 Md. 115, 119, 668 A.2d 929, 932 (1995); *Kaczorowski,* 309 Md. at 515, 525 A.2d at 633.

In *Scherr v. Braun,* 211 Md. 553, 128 A.2d 388 (1957), Judge Hall Hammond, writing for this Court, discussed the factors used to determine whether a deadline contained within a statute is mandatory or directory, thereby enabling the court to exercise its discretion to act outside of the prescribed time limitation:

Where the directions of a statute look to the orderly and prompt conduct of business, including the business of a court, it is generally regarded as directory unless consequences for failure to act in accordance with the statute are set out. *Statutory provisions fixing the time for performance of acts are held to be directory where there are no negative words restraining the doing of the act after the time specified and no penalty is imposed for delay.*

*Id.* at 561, 128 A.2d at 391 (internal citation omitted) (emphasis added). In *Scherr,* the statute's language,

The *failure* of the court to determine an appeal within a period of 30 days after the record has been filed in court by the local board as above provided, *shall constitute an automatic affirmance of the local board's decision,* unless the time has been extended by the court for good cause shown . . . [,]

was found to be mandatory in nature, because it contained "specific consequences of a failure to act [i.e., 'shall constitute an automatic affirmance of the local board's decision'], and an implication in the literal language that [was] a negation of the right to act after the time specified [i.e., if the court fails to act within thirty days, it has no further jurisdiction in the matter]." *Id.* at 562, 128 A.2d at 391.

This Court has employed this two prong test in various contexts in order to determine whether the statute or rule-based deadline is directory in nature rather than mandatory, emphasizing the lack of explicit consequences for non-compliance with time limitations. *See In re Dewayne H.,* 290 Md. 401, 405–07, 430 A.2d 76, 79–80 (1981) (holding that the failure to prescribe a sanction for non-conformance with time limitations within a statute and its corresponding rule indicated that its effect was intended to be directory and not mandatory); *Resetar v. State Board of Education,* 284 Md. 537, 547–50, 399 A.2d 225, 230–32 (1979) (holding that the County Board's regulation was directory because it "provide[d] no penalty and ma[d]e no provision in the event of a violation of the limit imposed"); *Maryland State Bar Association v. Frank,* 272 Md. 528, 533, 325 A.2d 718, 721 (1974) (holding that statute requiring bar association or state's attorney on judge's order to prosecute charges of professional misconduct not more than sixty days from the date of order was directory rather than mandatory with respect to the time limitation because "it [was] of some significance ... that the language of the statute provide[d] no penalty for failure to act within the time prescribed"); *Director, Patuxent Institution v. Cash,* 269 Md. 331, 305 A.2d 833 (1973) (holding that the statutory reporting provision deadline for persons awaiting examination and evaluation at Patuxent was directory and not mandatory); *Garland v. Director, Patuxent Institution,* 224 Md. 653, 655, 167 A.2d 91, 92 (1961) (holding that statutory provision for hearing new trial motions in criminal cases within ten days was directory rather than mandatory and that failure to hear the motion within time prescribed was not, alone, ground for relief under the Post Conviction Procedure Act); *Scherr,* 211 Md. at 566,

128 A.2d at 394 (holding that statute providing that failure of court to determine appeal from Liquor License Board within thirty days after filing of record was mandatory because the statute provided an automatic affirmance of the agency's decision as a sanction for non-compliance with the deadline).

Obviously, when a statute or rule is directory rather than mandatory, a court is not automatically bound to adhere to time limitations and could grant requests for extensions of time, despite the expiration of a previous election period. *See Cash*, 269 Md. at 341, 305 A.2d at 839 (analyzing former Md.Code (1957), Art. 31B § 7(a), recodified without substantive change as Md.Code (1999, 2002 Cum.Supp.), § 4–301(b) of the Correctional Services Article as directory); *Garland*, 224 Md. at 655, 167 A.2d at 92 (interpreting former Md.Code (1957), Art. 27 § 594(a), recodified without substantive change as Md.Code (2001), § 6–105 of the Criminal Procedure Article as directory). In this case, neither Section 3–206(a) of the Estates and Trusts Article nor its corresponding Rule 6–411(c) uses language that expressly constrains the Orphans' Court from granting an extension after the time specified and no penalty is imposed for delay in granting a request for extension whether timely filed or not. *See Scherr*, 211 Md. at 562, 566, 128 A.2d at 391, 394 (failure of the court to act within prescribed time period resulted in an automatic affirmance of the local Liquor Board's decision). In the absence of such language or legislative intent to the contrary, Section 3–206(a) and Rule 6–411(c) should be interpreted as directory rather than mandatory in nature and Mrs. Downes should be afforded the opportunity to show "good cause" as to why her fifth petition for extension to file an election was tardy.