58 A.3d 547

**Delores Craft O'Brien HEFFERNAN**

v.

**STATE of Maryland.**

**No. 1711, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 21, 2012.

232

Amy E. Brennan (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: WRIGHT, GRAEFF, JAMES R. EYLER, (Retired, Specially Assigned) JJ.

EYLER, JAMES R., J.

Following a jury trial in the Circuit Court for Montgomery County, Delores Craft O'Brien Heffernan, appellant, was convicted of two counts of obtaining property with a value over $500, by presenting a bad check. The sentencing court imposed a ninety-day term of incarceration for each count, which was to be served consecutively.

Appellant appealed and presents the following questions, which we quote:

1.   Is the evidence insufficient to sustain the convictions for obtaining property by bad check where the checks were written for rent and a security deposit and if so, was [appellant] denied her right to effective assistance of counsel where her trial attorney failed to argue the motion for judgment of acquittal with particularity?

2.   Did the trial court abuse its discretion in denying appellant's motion to set aside the verdict on the basis that bad checks for rent and a security deposit may not be prosecuted under the bad check statute?

For reasons that follow, we are unable to address the merits of the first question, and we answer no to the second question. Accordingly, we affirm the judgments of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In late October 2009, appellant saw an advertisement in a local newspaper for a basement apartment owned by Constance Heckert. On November 1, 2009, after visiting the apartment at 11410 Stonewood Lane in Rockville, appellant and Ms. Heckert executed a lease agreement. The term of the lease was one year with a rental of $11,400, payable in $950 monthly installments. The lease also required a security deposit in the amount of $950.

Ms. Heckert testified that, in accordance with her usual practice, she required payment of the first month's rent and payment of the security deposit at the time she entered into the lease. Appellant gave Ms. Heckert two checks dated

November 1, 2009, each in the amount of $950, one for the security deposit and one for the first month's rent. Ms. Heckert testified that she "deposited [the checks] right away" and, on November 10, left to spend the winter in Florida.

Ms. Heckert testified that, prior to leaving for Florida, she gave appellant an extra key to her home, so appellant could water plants. According to Ms. Heckert, she also instructed appellant to pay rent by directly depositing money in Ms. Heckert's bank account. In order to do this, Ms. Heckert stated that she provided appellant with the necessary information and deposit slips.

Ms. Heckert testified to the following. On November 21, she discovered that appellant's November 1 checks bounced due to insufficient funds. Two days later, on November 23, appellant promised to pay Ms. Heckert the amount owed. On November 26, Ms. Heckert called appellant again because appellant failed to pay any money owed. The following day, appellant promised that, on November 30, she would deposit money into Ms. Heckert's account. On December 2, 2009, appellant "called to say she had put in $1,000 after 6 o'clock," but in fact she had deposited $340. Appellant claimed to have deposited an additional $950 that day, but in fact, the total amount appellant deposited into Ms. Heckert's account between November 30–December 4, 2009 was $750. On December 17, Ms. Heckert returned to her home in Rockville because she "knew that something was really wrong." Upon her arrival, she discovered that items of personalty were missing and that there was damage to both her home and appellant's apartment.

Appellant testified to the following. While seeing the apartment for the first time, she informed Ms. Heckert that she could not immediately move in due to her financial situation. Appellant explained that she could not move in because she would not receive enough money to cover rent until November 15, after which time she could enter into a lease. Appellant asked Ms. Heckert if she would be willing to take postdated checks, but Ms. Heckert was unwilling to oblige. While Ms.

Heckert was unwilling to take postdated checks, she was willing to refrain from cashing the rent check until November 15. Specifically, Ms. Heckert said: "We can start the lease today and, if you give me the checks, I will hold the checks until you tell me when is appropriate to deposit them." Ms. Heckert stated that she would not cash the security deposit check until November 30.

Appellant testified that there were many problems with her apartment. She stated that she contacted Ms. Heckert on either November 20 or November 23 about problems with the heating and ventilation. Ms. Heckert was unwilling to resolve the problem to appellant's satisfaction, and as a result, according to appellant, she informed Ms. Heckert that she was vacating the premises.

Appellant also explained that she deposited $750.00, not the $950.00 owed for the first month's rent, because she and Ms. Heckert had an agreement that appellant would clean Ms. Heckert's house for $200.00. Appellant did not deposit the additional $950.00 owed for the security deposit because, according to her testimony, Heckert said "forget about the other check since [appellant] was prorating and moving out."

After appellant's motion for judgment of acquittal was denied, the jury convicted appellant of two counts of obtaining property with a value over $500. Subsequently, appellant, despite having counsel of record, filed, without counsel's signature, an "Emergency Motion To Set Aside Jury Verdict As A Matter of Law." In the motion, appellant argued that bad checks for rent are not subject to criminal penalties. In support of her motion, appellant attached a copy of the District Court of Maryland's webpage, which provided that bad checks in payment "under a contract" cannot be deemed a criminal violation. Specifically, in pertinent part, the attached page provided:

### What is a Bad Check Violation?

A bad check violation occurs when a person gives another person or business a bad check for an immediate exchange of goods or services.

Two conditions must be met to charge an individual with a bad check violation:

- An immediate exchange of goods or services. A bounced check is not always a bad check violation. For example, payments under a contract, such as checks for rent, utilities, or car payments are not bad check viola-‛tions. Debtors must be pursued through civil litigation in these instances . . . .

The court denied appellant's motion by written order.

Additional facts will be supplied as necessary in our discussion of the issues.

## DISCUSSION

### I

*Statutory Provisions and Contentions of Parties*

The relevant statutory provisions are as follows:

Criminal Law Article (CL) § 8–103 of the Maryland Code Annotated (Md.Code Ann.) (2002, 2010 Supp.) provides in pertinent part:

(a) Issuing check with knowledge of insufficient funds.—A person may not **obtain property or services** by issuing a check if:

(1) the person knows that there are insufficient funds with the drawee to cover the check and other outstanding checks;

(2) the person intends or believes when issuing the check that payment will be refused by the drawee on presentment; and

(3) payment of the check is refused by the drawee on presentment.

(Emphasis added).

Pursuant to CL § 8–101(h), the term "**Property** has the meaning stated in § 7–101 of this article," and pursuant to § 8–101(j),

"Service" includes:

(1) labor or professional service;

(2) telecommunication, public utility, toll facility, or transportation services;

(3) lodging, entertainment, or restaurant service; and

(4) the use of computers, data processing, or other equipment.

(Emphasis added).

CL § 7–101 provides the following definition for the word property:

**(i) Property.—**

**(1) "Property" means anything of value.**

**(2) "Property" includes:**

(i) real estate;

(ii) money;

(iii) a commercial instrument;

(iv) an admission or transportation ticket;

(v) a written instrument representing or embodying rights concerning anything of value, or services, or anything otherwise of value to the owner;

(vi) a thing growing on or affixed to, or found on land, or part of or affixed to any building;

(vii) electricity, gas, and water;

(viii) a bird, animal, or fish that ordinarily is kept in a state of confinement;

(ix) food or drink;

(x) a sample, culture, microorganism, or specimen;

(xi) a record, recording, document, blueprint, drawing, map, or a whole or partial copy, description, photograph, prototype, or model of any of them;

(xii) an article, material, device, substance, or a whole or partial copy, description, photograph, prototype, or model of any of them that represents evidence of, reflects, or records a secret:

1. scientific, technical, merchandising, production, or management information; or

2. designed process, procedure, formula, invention, trade secret, or improvement;

(xiii) a financial instrument; and

(xiv) information, electronically produced data, and a computer software or program in a form readable by machine or individual.

(Emphasis added).

Appellant contends that CL § 8–103 does not apply to her because "a leasehold interest in a rental apartment does not meet the definition of 'property' or 'services' applicable to the bad check statute." In addition, appellant argues that appellant did not "obtain" anything in exchange for the checks, explaining that appellant obtained possession because of the signed lease, not because of the checks. At the very least, appellant argues, the statute is ambiguous, and because it is a penal statute, it should be strictly construed.

Appellant acknowledges, however, that the issue of legal sufficiency was not argued in support of her motion for judgment of acquittal, as required by Md. Rule 4–324(a). She argues that the failure to do so constituted ineffective assistance of counsel. Appellant recognizes that, ordinarily, we would not review an ineffective assistance claim on direct appeal but rather leave it for a post-conviction proceeding. Nevertheless, appellant argues that we should address the issue because the critical facts are not in dispute and the trial record "is sufficiently developed" to allow us to review the issue before us. In addition, appellant points out that she has no other means of obtaining review because she has served her sentence and, thus, cannot bring a post-conviction proceeding. *See Testerman v. State,* 170 Md.App. 324, 343, 907 A.2d 294 (2006), *cert. dismissed,* 399 Md. 340, 924 A.2d 308 (2007). In addition, she cannot satisfy the requirement of alleging and proving significant collateral consequences in order to maintain a coram nobis action. *See* Md. Rule 15–1202(b)(1)(F).

Finally, in the alternative, appellant argues that if we do not review the question of legal sufficiency in the context of

ineffective assistance of counsel, we should review it in the context of the circuit court's denial of appellant's motion to set aside the verdict.

## II.

### *Preservation and Ineffective Assistance of Counsel*

■ There is no dispute that appellant's counsel failed to preserve the claim before us. Counsel did not make the arguments that appellant now urges on appeal. To prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that it prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

While we do not readily perceive a trial strategy that would explain defense counsel's failure to raise the issue of legal sufficiency, we do note that counsel refused to endorse the argument when raised by appellant in her post-verdict motion. Nevertheless, even though the record is sufficient to enable us to address the merits, as we shall explain, the result would not have been different. Consequently, appellant cannot satisfy the prejudice prong of *Strickland.*

## III.

### *Motion to Set Aside the Verdict*

■ Appellant's final contention is that the court abused its discretion in denying her motion to set aside the verdict. The court abused its discretion, appellant argues, because it "summarily denied the motion, by written order, and thereby denied [appellant's] request that her motion 'be heard on an emergency basis.' As a result, the court's basis for denying the motion is unknown." Appellant urges us to reach the question of legal sufficiency in this context.

Ordinarily, in a case tried before a jury, we will not reach the merits of a challenge to the legal sufficiency of the evidence in the context of a post-trial motion when appellant fails to raise the issue on a motion for judgment of acquittal.

This Court's opinion in *Murphy v. State,* 100 Md.App. 131, 640 A.2d 230 (1994) is not to the contrary. In *Murphy,* the defendant was convicted by the court after pleading not guilty on an agreed statement of facts. Post-conviction, the defendant filed a motion to set aside the verdict, which the court denied. On appeal, we held that the court erred in denying the motion because the agreed statement of facts was legally insufficient to support the conviction. *Id.* at 136, 640 A.2d 230. That case was non-jury, however; in that context we must review sufficiency of the evidence when requested to do so. *Jones v. State,* 77 Md.App. 193, 196, 549 A.2d 1150 (1988).

Consequently, in the case before us, the issue of legal sufficiency not having been raised by pre-verdict motion, we could conclude that the trial court did not abuse its discretion in denying the post-verdict motion, which was premised solely on the lack of legal sufficiency of the evidence, because the issue was not raised earlier. Nevertheless, we shall address the merits of appellant's argument because it appears there is confusion in the bench and bar with respect to the application of the statutes in question regarding the payment of rent, and it is important to clarify the application of the statutes. Moreover, for the reasons argued above, appellant has no avenue, other than this direct appeal, by which to seek redress and raise the issue of legal sufficiency.

## IV.

### *Merits*

In support of her contention that the rental of an apartment is not property or services with the meaning of the statute in question, appellant argues that the statute is ambiguous and, as an aid to interpretation, relies on (1) the holding in *State v. Sinclair,* 274 Md. 646, 337 A.2d 703 (1975); (2) the rule of *ejusdem generis* as explained in *Sinclair;* and (3) legislative history. Because it is a penal statute, appellant asserts that it should be narrowly construed.

In *Sinclair,* the defendant issued a check in payment of past due wages, and the check was dishonored because of insuffi-

cient funds. *Id.* at 647, 337 A.2d 703. The defendant was convicted of violating Md.Code Ann., Art. 27, § 144, which provided:

Every person who shall obtain money, credit, goods, wares or anything of value, of the value of one hundred dollars or more, from another by means of a check, draft or any other negotiable instrument of any kind, with intent at the time of giving such instrument

to stop payment or otherwise cause the drawee to dishonor it shall have obtained the "money, credit, goods, wares or anything of value" with intent to defraud. *Id.* at 650, 337 A.2d 703. The Court, citing various authorities, stated that generally statutes requiring proof that the victim gave money or property in reliance on a check are not violated because there is no intent to defraud when the check is in payment of an antecedent debt. Thus, the defendant did not violate the statute in question because the check was given for an existing obligation. In the words of the statute, the defendant did not "*obtain*" money or any of the other items listed. *Id.* at 658, 337 A.2d 703. (Emphasis added).

In addition, the Court concluded that the defendant had not obtained "*anything of value.*" *Id.* (Emphasis added). In reaching that conclusion, the Court relied in part on the rule of *ejusdem generis.* The Court explained:

Nor, as we see it, did the appellees by that [bad] check obtain "anything of value" from [the payee]. Under the rule of *ejusdem generis,* where the general words in a statute, such as "other thing of value," used in § 144, follow the designation of particular things or classes of subjects, such as "money, credit, goods, wares," etc., the general words in the statute will usually be construed to include only those things of the same class or general nature as those specifically antecedently mentioned. This rule is based on the supposition that if the legislature had intended the general words to be considered in an unrestricted sense it would not have enumerated the particular things. *See Smith v. Higinbothom,* 187 Md. 115, 130, 48 A.2d 754, 761 (1946). *See also Culotta v. Raimondi,* 251 Md. 384, 387, 247

A.2d 519, 521 (1968). The rule is applied more strictly in the construction of penal statutes—such as is Art. 27, § 144—since the rule, in its solicitude for life and liberty, requires that penal statutes be narrowly construed. *Smith v. Higinbothom, supra,* citing *State v. Fleming,* 173 Md. 192, 196, 195 A. 392, 393 (1937); and *Gooch v. United States,* 297 U.S. 124 [56 S.Ct. 395, 80 L.Ed. 522] (1936)

*Id.* at 658–59, 337 A.2d 703.

With respect to legislative history, in 1997, House Bill 1030 was introduced by Delegate C. Sue Hecht and others to amend the definition of "property" in the bad check statute to expressly include a leasehold interest in real property. The bill was introduced because the State's Attorney in Frederick County had interpreted the statute as excluding checks for the payment of past due rent. A floor report on the bill described the change as "clarifying in nature." The bill failed to pass the General Assembly.

In 1998, delegate Hecht and others introduced House Bill 474 which again sought to amend the bad check statute to expressly include a leasehold interest in the definition of property. A similar bill, Senate Bill 314, was introduced in the Senate. By letter dated February 20, 1998, an assistant Attorney General opined to the Chair of the House Judiciary Committee that "property" within the meaning of the bad check statute did not include a leasehold interest. By letter of the same date, another assistant Attorney General opined to Delegate Hecht that a bad check used to pay past due rent was not covered by the statute.

While the letters from the Attorney General's office correctly opined that the statute in question did not reach bad checks given to satisfy past due rent, the contents of the bill files reflect confusion on the part of some with respect to the distinction between use of a check to pay a pre-existing obligation as opposed to a current obligation, as compared to the payment of a rent obligation as opposed to a non-rent obligation. In other words, it appears some persons who have

considered the issue were or are of the view that the statute does not apply to any rent payment.

Before addressing the merits of that question, we pause to set forth the applicable standard of review. "Interpretation of a statute is a question of law, and, therefore, we review *de novo* the decision of the Circuit Court." *Moore v. State,* 388 Md. 446, 453, 879 A.2d 1111 (2005); *Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78 (2004). *See also Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006) ("[W]here an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review.").

When analyzing a statute, "[o]ur predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself." *Downes v. Downes,* 388 Md. 561, 571, 880 A.2d 343 (2005). *See also Smack v. Dep't of Health & Mental Hygiene,* 378 Md. 298, 304, 835 A.2d 1175 (2003) ("The predominant goal of statutory construction 'is to ascertain and implement, to the extent possible, the legislative intent.' ") (quoting *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160 (2002)).

"If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written and in a commonsense manner. We do not add words or ignore those that are there." *Downes,* 388 Md. at 571, 880 A.2d 343 (2005); *accord Mayor & City Council of Baltimore v. Chase,* 360 Md. 121, 131, 756 A.2d 987 (2000). *See also Black v. State,* 426 Md. 328, 338–39, 44 A.3d 362 (2012) ("We construe statutes and rules as a whole 'so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.' ") (quoting *Moore v. State,* 388 Md. 446, 453, 879 A.2d 1111 (2005)); *Moore v. State,* 424 Md. 118, 128, 34 A.3d 513 (2011) (" 'When the statute is part of a larger statutory scheme, it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the

statutory scheme as a whole considering the purpose, aim, or policy of the enacting body and attempt to harmonize provisions dealing with the same subject so that each may be given effect.' ") (quoting *Ray v. State*, 410 Md. 384, 405, 978 A.2d 736 (2009)). "If there is any ambiguity, we may then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created." *Downes*, 388 Md. at 571, 880 A.2d 343.

While we do not take issue with *Sinclair*, a better statement of the doctrine of *ejusdem generis* is found in *Tribbitt v. State*, 403 Md. 638, 943 A.2d 1260 (2008), in which the Court of Appeals elucidated:

> The doctrine of *ejusdem generis* applies when the following conditions exist: (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.

*Tribbitt*, 403 Md. at 657, 943 A.2d 1260 (quoting *In re Wallace W.*, 333 Md. 186, 190, 634 A.2d 53 (1993)). Furthermore, the Court of Appeals explained that ejusdem generis "is merely a rule of construction, and cannot be invoked to restrict the meaning of words within narrower limits than the statute intends, so as to subvert its obvious purpose." *Id.* (quoting *Blake v. State*, 210 Md. 459, 462, 124 A.2d 273 (1956)).

The statute before us contains language different from that in *Sinclair*. In *Sinclair*, the statute contained enumerated items followed by a general reference. In contrast, CL § 7–101(1) provides that "Property means anything of value" and § 7–101(2) provides that "Property includes" the categories that follow. The word "means" is typically employed "if the definition is intended to be exhaustive." *Hackley v. State*, 389 Md. 387, 393, 885 A.2d 816 (2005). This is followed by the word "includes," which is to be construed to illustrate possibilities—not as a way to limit or narrow statutes. *Id.; Tribbitt*,

403 Md. at 647–48, 943 A.2d 1260; Md.Code Ann., Art. 1 § 30. Thus, "property" is anything of value and the items listed in § 7–101(2) are illustrative and not exhaustive. By reading the statute as appellant argues, we would be improperly narrowing the meaning of the statute. Therefore, we will not unnecessarily limit the statute to the examples expressly provided. Thus, the statute may include the obtention of a leasehold interest.

With respect to the legislative history, assuming the failure to pass bills might be relevant under certain circumstances, it is irrelevant here because it addresses the issuance of checks for past due rent, an antecedent debt.

Again relying on *Sinclair*, appellant's remaining argument is that she did not "obtain" anything by uttering the bad checks. Appellant argues that she obtained possession of the leased premises by virtue of the lease, not the checks. Ms. Heckert testified, however, that possession of the apartment was given to appellant upon receipt of the checks. The factfinder could conclude that appellant drew two bad checks to obtain a leasehold interest. Thus, the evidence was sufficient to support the convictions.

We reiterate that the statute requires a person to "obtain" the property in question. The statute does not extend to those who have previously failed to pay rent. In other words, if the bad check is used to pay for an existing debt, *e.g.*, past due rent, then the provisions of the bad check statute would not apply. Here, appellant wrote two bad checks to obtain property, which, in this instance, was a leasehold interest. Consequently, there was sufficient evidence to support appellant's convictions.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY, AFFIRMED. COSTS TO BE PAID BY APPELLANT.**